39 F.3d 784
 63 USLW 2368, 18 Employee Benefits Cas. 2328,
Pens. Plan Guide P 23903O
 BUCKLEY DEMENT, INCORPORATED, as Sponsor and Administrator
of the Buckley Dement, Incorporated Employee
Health Plan, Plaintiff-Appellant,
v.
TRAVELERS PLAN ADMINISTRATORS OF ILLINOIS, INCORPORATED,
Defendant-Appellee.
 No. 93-4030.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 10, 1994.
Decided Nov. 8, 1994.
 
 John P. Morrison (argued), Jeffrey A. Blevins, Bell, Boyd & Lloyd, Chicago, IL, for plaintiff-appellant.
 Thomas H. Fegan, William G. Beatty (argued), Thomas J. Lyman, III, Marilyn McCabe Reidy, Johnson & Bell, Chicago, IL, for defendant-appellee.
 Before COFFEY, MESKILL* and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Buckley Dement, Inc. ("Buckley Dement") brought a complaint against the Travelers Plan Administrators of Illinois, Inc. ("TPA"), the third-party claims administrator of its employee health care plan. The complaint asserted that TPA failed to process certain claims before the lapse of Buckley Dement's excess loss insurance policy. The complaint alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and common-law claims for breach of contract, negligence, and breach of common-law fiduciary duty. The district court granted summary judgment to TPA on the ERISA count and declined to exercise supplemental jurisdiction over the remaining counts. For the reasons that follow, we affirm the judgment of the district court.
 
 
 2
 * A. Background
 
 
 3
 Buckley Dement is the sponsor, administrator and fiduciary of an ERISA-based group health program for its employees entitled the Buckley Dement, Inc. Employee Health Benefit Plan (the "Plan"). The Plan was self-funded by Buckley Dement. However, Buckley Dement also carried, during the period in question, an excess health insurance coverage policy issued by North American Insurance Company ("North American") to protect itself from catastrophic losses. The North American insurance plan was a "12/12" policy: North American would pay for claims if the predetermined exposure limit ($10,000 per covered participant per year) had been reached and the claim had been incurred and paid within the 12-month policy period, between November 1, 1990 and October 31, 1991. Buckley Dement also contracted with TPA to perform certain administrative duties with respect to its employees' claims under the Plan. The specific duties of TPA were set forth in a contract between Buckley Dement and TPA.
 
 
 4
 Thomas Fossati, a Buckley Dement employee who was a covered participant under the Plan, incurred large medical expenses due to the premature birth of twins to his family on May 29, 1991. One of the twins died shortly after birth, and the surviving twin's condition necessitated extensive medical care. Under the excess loss policy, North American would reimburse Buckley Dement for the Fossati claims that exceeded the $10,000 deductible limit as long as those claims were incurred and paid by Buckley Dement under the Plan prior to November 1, 1991. TPA's president and its customer service representative assured Buckley Dement that the Fossati baby's medical bills would be processed promptly so that they would be covered under the excess loss policy.
 
 
 5
 The majority of the medical claims related to the care of the Fossati infant were received and processed by TPA prior to October 31, 1991 and were therefore eligible for payment by North American. However, on October 28, 1991, TPA received two additional claims for the baby's care totaling $49,325.00. These claims were not processed prior to October 31, 1991, and were therefore ineligible for payment by North American. Buckley Dement paid the claims. Thereafter, it filed this action against TPA to recover those sums. It alleged that TPA's delay in filing the bills was a failure to administer the claims properly under the agreement, a failure which led to North American's denial of coverage.
 
 B. Complaint
 
 6
 Buckley Dement brought a four-count complaint against TPA. The complaint generally alleged that TPA failed to submit the appropriate claims to North American before the expiration of its policy "[b]ecause of its careless, reckless, irresponsible, and/or willful and wanton conduct." Complaint at p 12. Under Count I Buckley Dement set forth its ERISA claim pursuant to Secs. 502(a)(2) and (a)(3) of ERISA, 29 U.S.C. Secs. 1132(a)(2) and (a)(3).[1] It alleged that TPA was a fiduciary whose failure to process the Fossati claim in timely fashion constituted a violation of the Plan and of TPA's fiduciary and contractual duties. In this count, Buckley Dement requested "monetary relief in the amount of no less than $50,000 on account of Defendant's wrongful conduct and unjust enrichment," attorneys' fees and costs and other relief "as justice may require." Complaint at p 22.
 
 
 7
 Counts II through IV were common-law claims for breach of contract, negligence and breach of common-law fiduciary duty that, according to Buckley Dement, were brought under either state law or the federal common law of ERISA. Count II charged that TPA breached the Claims Administration Agreement by failing to process promptly, with care and diligence, the Fossati infant's claims. Buckley Dement requested the same monetary relief, fees, costs, and other relief under that count. Count III alleged that TPA breached the duty of care it owed Buckley Dement by failing to process the Fossati claims and by making false representations justifiably relied on by the plaintiff. Buckley Dement sought the same relief in that count, but added "punitive damages in an amount which is just." Finally, Count IV raised TPA's breaches of the fiduciary duties of care, prudence, good faith, fidelity, and diligence in the processing and handling of Plan claims. At the end of Count IV, closing the complaint, was a final ad damnum clause seeking the following relief:
 
 
 8
 (a) monetary relief in the amount of no less than $50,000;
 
 
 9
 (b) punitive damages in an amount which is just;
 
 
 10
 (c) an order requiring Defendant to disgorge all benefits and moneys received by Defendants from Plaintiff and North American during the term of the Claims Administration Agreement;
 
 
 11
 (d) an award of attorneys fees and costs in bringing this action; and
 
 
 12
 (e) such other, further or different relief as justice may require.
 
 
 13
 R. 1 at 8.
 
 
 14
 TPA responded to the complaint by denying liability under ERISA on the ground that it was not a fiduciary of the ERISA Plan. It moved to dismiss Counts II through IV, but later withdrew that motion and moved for summary judgment of the entire complaint.
 
 C. Holding of the District Court
 
 15
 On November 2, 1993, the district court granted summary judgment to TPA on Count I, the ERISA claim. The court first determined that no claim was stated under Sec. 1132(a)(2) because TPA was simply a claims administrator, a nonfiduciary without discretionary control or duties under its agreement with Buckley Dement. (R. 41 at 7-8.) It further held that Buckley Dement had not asserted a viable claim under Sec. 1132(a)(3) because its complaint did not seek equitable relief, the only relief allowed under that section of ERISA. (R. 41 at 8-9.)[2] The court noted that the allegations in the complaint focused on TPA's negligence, breach of duty and breach of contract. It then determined that this sort of claim is not a claim for equitable relief under ERISA. Rather, concluded the court, Buckley Dement's claims fell "with common state law causes of action in contract and negligence as opposed to the requirements of ERISA." (R. 41 at 9.) It therefore dismissed the ERISA count and declined to exercise its supplemental jurisdiction over the state law claims. (R. 41 at 10.)
 
 II
 ANALYSIS
 A. Count I: The ERISA Sec. 502(a) Claim
 
 16
 We conduct a de novo review of the district court's grant of summary judgment on the ERISA count. Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir.1994); Trustees of the Central States, Southeast & Southwest Areas Health & Welfare Fund v. State Farm Mut. Auto. Ins. Co., 17 F.3d 1081, 1083 (7th Cir.1994). We shall uphold a summary judgment determination entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), after drawing all reasonable inferences in favor of the party opposing the summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 
 17
 In its complaint, Buckley Dement based its ERISA claim on two sections of the statute's civil enforcement provisions, Secs. 502(a)(2) and (a)(3), codified at 29 U.S.C. Secs. 1132(a)(2) and (a)(3). As we have noted previously, the district court concluded that neither of these subsections provided a right of recovery to Buckley Dement. In this appeal, Buckley Dement does not challenge the district court's ruling that TPA is not a Sec. 502(a)(2) fiduciary.[3] Instead, Buckley Dement focuses on subsection (a)(3), the equitable remedies provision that allows a plan fiduciary such as Buckley Dement to obtain an injunction or "other appropriate equitable relief" for an act or practice that violates ERISA or the terms of the Plan. We therefore shall decide the case on the "battlefield the parties have chosen." Mertens v. Hewitt Assocs., --- U.S. ----, ----, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993).
 
 
 18
 We cannot agree with Buckley Dement that the district court erred in holding that the claim under (a)(3) fails because the remedy Buckley Dement sought was not equitable. Buckley Dement does not deny that it seeks monetary reimbursement for the claims that Buckley Dement was required to pay; it submits, however, that these money damages are the functional equivalent of disgorged benefits obtained by TPA and would make Buckley Dement whole again. This remedy, in Buckley Dement's view, is therefore "classic equitable relief" of the sort allowed under Sec. 502(a)(3). This characterization is not, in our view, a realistic one. A careful reading of Buckley Dement's complaint leads to the inevitable conclusion that the entire focus of its complaint is the payment of money damages--the costs of the Fossati baby's care. The monetary relief sought by Buckley Dement is inconsistent with the relief contemplated by Sec. 502(a)(3).
 
 
 19
 The Supreme Court's decision in Mertens requires the conclusion that we reach today. In Mertens petitioners sought monetary relief for the acts and omissions of a nonfiduciary (the actuary of the petitioners' retirement plan), who, they claimed, breached his professional duties to the ERISA plan. The Court described the comprehensive design of ERISA with its "six carefully integrated civil enforcement provisions" set up to remedy ERISA violations, id. at ----, 113 S.Ct. at 2066-67 (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985)), and recognized that Sec. 1132(a)(3) "does not, after all, authorize 'appropriate equitable relief' at large, but only 'appropriate equitable relief' for the purpose of 'redress[ing any] violations or ... enforc[ing] any provisions' of ERISA or an ERISA plan." Id. at ----, 113 S.Ct. at 2067. The Court emphasized that the statute includes only the typical remedies available in equity, not such "legal remedies" as compensatory damages or monetary relief. Id. at ----, 113 S.Ct. at 2069; see also Reich v. Continental Casualty Co., 33 F.3d 754, 756-57 (7th Cir.1994) (characterizing Mertens ); Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 993 (7th Cir.1993) (same). Mertens does not allow legal damages to be included as recoverable "appropriate equitable relief" authorized under Sec. 502(a)(3). Indeed, the Supreme Court in Mertens was confronted with just the sort of argument that is raised before us today, and gave us a definitive answer that must control our decision. In Mertens, the Court specified that equitable relief within the meaning of this statute is the traditional injunctive, restitutionary, noncompensatory type of relief:
 
 
 20
 Petitioners maintain that the object of their suit [inter alia, monetary relief] is "appropriate equitable relief" under Sec. 502(a)(3). They do not, however, seek a remedy traditionally viewed as "equitable," such as injunction or restitution.... Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages--monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief. And though we have never interpreted the precise phrase "other appropriate equitable relief," we have construed the similar language of Title VII of the Civil Rights Act of 1964 ... to preclude "awards for compensatory or punitive damages."
 
 
 21
 Mertens, --- U.S. at ----, 113 S.Ct. at 2068 (citations omitted).
 
 
 22
 We believe that the same characterization is appropriate with regard to Buckley Dement's claim. When we examine the "substance of the remedy sought ... rather than the label placed on that remedy," see Watkins v. Westinghouse Hanford Co., 12 F.3d 1517, 1528 n. 5 (9th Cir.1993), we conclude that the relief Buckley Dement has sought is, in fact, compensatory damages--monetary relief for all losses it sustained as a result of TPA's failure to process certain claims. ERISA's Sec. 502(a)(3) does not sanction the recovery of such damages.
 
 
 23
 B. Federal Common-Law Right to Relief under ERISA
 
 
 24
 Buckley Dement also claims that, even if Sec. 503(a)(3) does not apply, we may imply a federal common-law right to relief under ERISA. Buckley Dement states that Congress gave federal courts the authority to develop federal common law to fill the gaps and interstices of ERISA. It further reasons that, because ERISA does not specifically address Buckley Dement's allegations concerning the enforcement of claims handled by a nonfiduciary administrator, federal common law must be applied to effectuate the statute. Buckley Dement submits that the agreement with TPA was an important instrument for carrying out its ERISA Plan, and that the funds it seeks to recoup will preserve the fiscal integrity of its Plan. Such an action, it continues, would be quite compatible with ERISA's purpose of preserving and enhancing the fiscal integrity of the Plan. It contends that the availability of such a claim may often be the only recourse available to protect the fiscal integrity of the Plan from the negligence of a nonfiduciary administrator. At the same time, the cause of action would deter inept, corrupt or slothful administration by such entities. It characterizes the federal common-law claims for which it seeks recognition as in the nature of an action for estoppel, restitution, indemnity, contribution and/or money damages for the expenditures it has had to make because of the failure of the administrator to secure payment of the charges. Buckley Dement points out that this circuit has applied equitable estoppel. Black v. TIC Inv. Corp., 900 F.2d 112, 115 (7th Cir.1990). It suggests that the situation before us in this case can be characterized as an estoppel situation because the evidence will establish that TPA made misleading representations that it was expediting the claims in order that they would fall within the coverage period.
 
 
 25
 In the alternative, Buckley Dement submits that the claim can be characterized appropriately as a restitution claim. See UIU Severance Pay Trust Fund v. Local Union No. 18-U, 998 F.2d 509, 513 (7th Cir.1993). While its rationale is stated very imprecisely, Buckley Dement appears to argue that permitting such a cause of action would vindicate the statutory policies of ERISA. Finally, it argues that the claim can be characterized as one for contribution, indemnification, or damages because Buckley Dement has been required to shoulder the whole financial burden of a matter that, but for the actions of TPA, would have been handled by insurance.
 
 
 26
 TPA responds that Buckley Dement is attempting to add to the legal remedies already set forth in the statute and notes that the Supreme Court has made clear that, given the careful delineation of legal remedies in the statute itself, it is not appropriate for the courts to fashion causes of action other than those provided by Congress. It contends that Buckley Dement is asking that this court engraft on ERISA breach of contract, negligence, and breach of fiduciary duty claims that cannot be found within the statutory scheme. Moreover, notes TPA, Buckley Dement did not set forth in its pleadings a claim for estoppel, indemnity or contribution, and there is no right to restitution because no wrongful taking or withholding of payments occurred.
 
 
 27
 It is true that, in interpreting the provisions of ERISA, federal courts are charged with the responsibility of fashioning a federal common law " 'to deal with issues involving rights and obligations under private welfare and pension plans.' " Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26, 77 L.Ed.2d 420 (1983) (quoting 120 Cong.Rec. 29942 (1974) (remarks of Senator Javits)); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557-58, 95 L.Ed.2d 39 (1987). Therefore, for example, in interpreting ERISA plans, we have utilized a federal common law of contract interpretation rather than relegating such interpretative matters to the law of the individual states. See, e.g., Hammond v. Fidelity & Guar. Life Ins. Co., 965 F.2d 428, 430 (7th Cir.1992). However, as the Supreme Court has pointed out to us on more than one occasion, "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries" in pension and welfare benefit plans. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). The statute's "six carefully integrated civil enforcement provisions" to remedy ERISA violations, found at 29 U.S.C. Sec. 1132(a), demonstrate the evident care with which the remedial aspects of the statute were crafted. See Pilot Life, 481 U.S. at 54, 107 S.Ct. at 1556. This consideration counsels against our concluding that Congress intended the federal courts to fashion any other remedies. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). More recently, the Supreme Court, in Mertens, made clear that the statute's detailed enforcement scheme provides "strong evidence that Congress did not intend to authorize other remedies." --- U.S. at ----, 113 S.Ct. at 2067 (citing Russell, 473 U.S. at 146-47, 105 S.Ct. at 3092-93). "We have ... been extremely reluctant to find that ERISA creates certain causes of action by implication in addition to those enumerated in the statute itself." UIU, 998 F.2d at 512. Rather, mindful of our role as an intermediate appellate court, we have concluded that "because ERISA is a highly technical statute our part is to apply it as precisely as we can, rather than to make adjustments according to a sense of equities in a particular case." Johnson v. Georgia-Pacific Corp., 19 F.3d 1184, 1190 (7th Cir.1994); see also Pappas v. Buck Consultants, Inc., 923 F.2d 531, 541 (7th Cir.1991) (describing the "far more circumscribed power [of federal courts] to augment ERISA's remedial provisions"); Giardono v. Jones, 867 F.2d 409, 413 (7th Cir.1989) (explaining that "the statutory scheme of ERISA does not lend itself to judicial expansion of available remedies."). Even when we have allowed restitutionary relief under ERISA, see UIU, 998 F.2d at 512-13, we have pointedly observed that we were not attempting to improve on the "self-consciously comprehensive program" of ERISA with federal common law. Id. at 512. In that case, we approved a restitutionary remedy that was likened closely to the statutory obligation of the employer to make required contributions to the plan. We held that, given this obligation of the employer, it was appropriate to permit the restitution of payments mistakenly made. In similar fashion, in Black, none of the parties was a nonfiduciary. In that case we applied equitable estoppel principles narrowly "to claims for benefits under unfunded single-employer welfare benefit plans under ERISA" because an employer had made false representations to his employee. Black, 900 F.2d at 115.
 
 
 28
 Our holdings in UIU and Black were consistent with our holding in Pappas. In that case, we had noted that our authority to augment the specific remedial provisions of ERISA was "far more circumscribed" than our power to create substantive federal common law to implement the provisions of ERISA. Pappas, 923 F.2d at 541. Relying on the Supreme Court's holding in Pilot Life, we noted that this limitation was due to the obvious care that Congress had taken in delineating the scope of ERISA's remedial power. Consequently, we determined that Congress' failure to authorize suits against professionals who advise plan administrators must be considered an affirmative decision not to permit such a cause of action. Id.
 
 
 29
 Our approach in Pappas also is compatible with the approach of the Supreme Court in Mertens. As noted by our colleagues of the First Circuit in the wake of Mertens, the Supreme Court not only has confirmed that monetary damages are not available against nonfiduciaries, but has cast significant doubt as to whether ERISA contemplated permitting such an action against a nonfiduciary. Reich v. Rowe, 20 F.3d 25, 28-29 (1st Cir.1994). As we did in Pappas, the judges of the First Circuit discerned in the congressional intent a clear delineation between the statute's treatment of those who can be described as fiduciaries within the meaning of the Act and those who are more properly described as service providers.
 
 
 30
 We believe, therefore, that as Pappas suggests and Mertens and Reich confirm, we are without authority to entertain a claim for relief against a nonfiduciary based on our fashioning of a federal common-law remedy. Accordingly, even if we were to determine that the complaint adequately pleads a federal common-law remedy such as those suggested on appeal by Buckley Dement, we could not say that ERISA permits such relief against a nonfiduciary.[4]
 
 Conclusion
 
 31
 For the foregoing reasons, the judgment of the district court granting summary judgment to TPA is affirmed.
 
 
 32
 AFFIRMED.
 
 
 
 *
 The Honorable Thomas J. Meskill, Circuit Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation
 
 
 [1]
 The pertinent subsections of section 502(a) provide:
 A civil action may be brought--
 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409; [or]
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan[.]
 29 U.S.C. Secs. 1132(a)(2), (3).
 
 
 [2]
 The court had already noted that the monetary damages being sought for TPA's delay in processing certain claims were not injunctive or equitable relief. (R. 41 at 1 n. 1.)
 
 
 [3]
 The district court's determination that TPA was not a fiduciary under the Plan was based on the terms of the Claims Administration Agreement between Buckley Dement and TPA, which stated that Buckley Dement had "absolute authority with respect to the control, management, investment, disposition or utilization of Plan assets." The Agreement specified that TPA, its administrative agent, did not possess "any discretion or authority" over the Plan assets
 
 
 [4]
 To the extent that Buckley Dement's claim presents state law based supplemental claims, the district court correctly dismissed those claims upon its dismissal before trial of the federal claims