# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3087EA

_____

Harold Ives Trucking Company and    *
Harold Ives Trucking Company    *
Employee Medical and Dental Plan,    *

       *

           Appellants,    *   On Appeal from the United

       *   States District Court

        v.    *   for the Eastern District

       *   of Arkansas.

       *

Spradley & Coker, Inc., and    *
HealthSource Arkansas, Inc.,    *

       *

           Appellees.    *

_____

Submitted: March 9, 1999

Filed: May 18, 1999

_____

Before RICHARD S. ARNOLD and HANSEN, Circuit Judges, and STROM,[1] District
     Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

       This case is brought under the Employee Retirement Income Security Act of
1974 (ERISA), 29 U.S.C. § 1001 et seq., by the sponsor of an ERISA plan to recover

_____

[1]The Hon. Lyle E. Strom, United States District Judge for the District of
Nebraska, sitting by designation.

damages from the plan's third-party administrator for breach of fiduciary duty. The District Court, after trial, found that the defendant was a fiduciary, and that it had violated its duty. The Court entered judgment for the defendant, however, holding that the plaintiffs did not have standing to bring an ERISA action for damages under 29 U.S.C. § 1132(a)(2). We reverse.

## I.

The events that led to this lawsuit are not in dispute and may be briefly summarized. In early October 1994, Kenneth Elliott was involved in an automobile accident. Mr. Elliott, a former employee of Harold Ives Trucking Company (Harold Ives) and a participant in the company's health benefits plan, sustained serious head injuries and was hospitalized at the University of Arkansas for Medical Sciences (UAMS). Several days after the accident, Mr. Elliott was transferred to Baptist Rehabilitation Institute, where he remained for more than a month. Later, Mr. Elliott's doctor recommended that he be moved again, this time to the Timber Ridge Ranch NeuroRehabilitation Center. Before he was moved, however, Spradley & Coker, Inc., the third-party administrator of the Harold Ives plan, determined that charges incurred at Timber Ridge could not be paid by the plan because Timber Ridge was not a "covered facility." Spradley & Coker notified Timber Ridge of this decision on October 26, after consulting with Jefferson Pilot Life Insurance Company, the excess loss carrier for the plan. (Mr. Elliott's medical expenses were approaching $50,000, the excess loss policy's deductible.) Mr. Elliott's attorney objected to Spradley & Coker's denial of coverage, and, on November 17, Spradley & Coker reversed its decision, notifying Timber Ridge that Mr. Elliott's hospitalization at Timber Ridge would be covered. This decision was made despite the fact that Jefferson Pilot had not changed its mind about coverage. That day, Mr. Elliott was moved to Timber Ridge, where he stayed until April of 1995, incurring almost $73,000 in additional medical expenses.

A representative of Spradley & Coker testified that, although Jefferson Pilot was "adamant" that charges at Timber Ridge would not be covered by its excess loss policy, Spradley & Coker never informed Harold Ives of Jefferson Pilot's position. Two representatives of Spradley & Coker testified that, at the time Spradley & Coker reversed its decision, Jefferson Pilot had not changed its original position that Timber Ridge was not a "covered facility." One of these witnesses testified that Spradley & Coker should have provided written notification to Harold Ives Trucking of Jefferson Pilot's position because it was something the company would "need to know."

At the direction of Spradley & Coker, the plan paid Timber Ridge $72,942.23. By that time, Mr. Elliott's treatment at UAMS and Baptist had exhausted the $50,000 deductible under the Jefferson Pilot excess loss policy. Spradley & Coker submitted its first claim to Jefferson Pilot in early 1995, and Jefferson Pilot formally denied coverage of all of the Timber Ridge charges later that year.

Harold Ives, as sponsor of the plan, and the plan itself, brought an action against Jefferson Pilot for wrongfully denying the Timber Ridge claims. Harold Ives also sued Spradley & Coker and its successor, HealthSource Arkansas, Inc., for violating its duty as a fiduciary under ERISA, and for breach of the claims-administration contract that governed the parties' relationship. With respect to the claim against Jefferson Pilot, the District Court held that, although Timber Ridge was not a covered facility under the plan, certain services provided to Mr. Elliott there, including physical, occupational, and speech therapy, were covered, without regard to where the services were provided. The Court directed the plaintiffs and Jefferson Pilot to determine which charges fell within those categories, and later entered judgment against Jefferson Pilot in the amount of $32,586.75. Jefferson Pilot is not a party to this appeal, and the District Court's decision as to the extent of coverage afforded by its policy is no longer at issue.

II.

As we have noted, the District Court held that Spradley & Coker, as third-party administrator of the plan, functioned as a fiduciary, and violated its duty "when it failed to advise [the plaintiffs] that Timber Ridge Ranch was not a 'covered facility' under the Plan." We agree. First, the definitions section of ERISA, 29 U.S.C. § 1002 (1994), provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . .." 29 U.S.C. § 1002(21)(A). As Spradley & Coker argues, the administration contract provides expressly that it would have no discretionary authority as third-party administrator, and that it would provide only ministerial services. But the contract is controlling only to the extent that Spradley & Coker actually carried out its responsibilities in a manner consistent with its provisions. In other words, Spradley & Coker was not a fiduciary so long as it performed only ministerial duties. However, when a third-party administrator assumes discretionary authority, as occurred here when Spradley & Coker reversed its original decision that Mr. Elliott's hospitalization at Timber Ridge would not be covered by the plan, without consulting the plaintiffs, and in the face of Jefferson Pilot's "adamant" view that the charges would not be covered, it must be held to have acted as a fiduciary.

Second, ERISA requires that a fiduciary carry out its responsibilities "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Spradley & Coker knew that Mr. Elliott's expenses were approaching $50,000, and that Harold Ives would expect Jefferson Pilot to reimburse the plan for claims paid on Mr. Elliott's behalf in excess of that deductible. Had Spradley & Coker disclosed the information, Harold Ives, as the plan sponsor and named administrator, could have filed a declaratory judgment action to determine its rights under the

-4-

Jefferson Pilot policy, or it could have made other arrangements for Mr. Elliott's medical care. Spradley & Coker had an obligation to disclose the information to Harold Ives, and it violated its duty when it failed to do so.

III.

Because Harold Ives is vested with and exercises discretionary authority and control as the plan sponsor and named administrator, it is a fiduciary under 29 U.S.C. § 1002(21)(A) (a person is a fiduciary if he or she has or exercises any discretionary authority or control over the management of a plan). Section 1132(a) provides that "[a] civil action may be brought . . . (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Section 1109(a) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . .." As a fiduciary, therefore, Harold Ives has standing under 29 U.S.C. 1132(a)(2) to bring an action against Spradley & Coker for breach of fiduciary duty. In addition, the plan, as an "employee welfare benefit plan" as defined in § 1002(1), "may sue or be sued . . . as an entity." 29 U.S.C. § 1132(d)(1). Accordingly, we hold that plaintiffs have standing to bring an action for damages under § 1132(a)(2).

Spradley & Coker argues that damages are not available in this action. Any relief, it says, must be limited to an equitable remedy. Defendants cite Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co., 48 F.3d 365 (8th Cir. 1995), and Novak v. Andersen Corp., 962 F.2d 757 (8th Cir. 1992). Both of those cases, however, were actions under §1132(a)(3), not, like the present case, 1132(a)(2). We have held, in an action brought by the Secretary of Labor, that damages are available as relief in an action under §1109(a), as applied through §1132(a)(2). Martin v. Feilen, 965 F.2d 660

-5-

(8th Cir. 1992). Here, the relief requested by Harold Ives and its plan falls squarely within the plain meaning §1132(a)(2). An award of damages will compel Spradley & Coker "to make good to . . . [the] plan any losses to the plan resulting from . . . [defendant's] breach . . .." 29 U.S.C. §1109(a). Damages, in addition, are "remedial relief" other than "equitable."

IV.

Section 1132(a), by incorporating § 1109(a), requires a fiduciary that has violated its duty to "make good . . . any losses to the plan resulting from such breach." The cause is therefore remanded to the District Court with instructions to enter judgment against Spradley & Coker in favor of plaintiffs for $40,355.48, which represents the amount of the loss sustained by the plan as a result of the breach, less the recovery from Jefferson Pilot.

The plaintiffs also seek an injunction under § 1132(a)(3) to prevent Spradley & Coker from pursuing recovery from Timber Ridge. As they suggest, there is evidence in the record that Spradley & Coker sought a refund from Timber Ridge on behalf of the plan. Jt. App. 515-16. Although the issue is not briefed fully by the parties, Spradley & Coker, so far as we can determine, has raised no claim against Timber Ridge on its own behalf. In any event, the District Court, on remand, will be in a better position to decide the potential merits of any such claim, should one be made. We therefore deny plaintiffs' request for an injunction at this stage of the case.

The judgment is reversed, and the cause remanded with instructions to enter judgment against Spradley & Coker in the amount of $40,355.48, together with interest allowed by law. The judgment shall inure to the benefit of the plan. The District Court shall conduct such further proceedings, if any, as may be just with respect to any outstanding request for injunctive relief.

-6-

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.