**ANALYTICAL SURVEYS, INC., Plaintiff,**

v.

**INTERCARE HEALTH PLANS, INC., and John Alden Life Insurance Company (a subsidiary of John Alden Financial Corporation and Fortis, Inc.), Defendants.**

No. IP 99–1422 C B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

April 25, 2000.

Irwin B. Levin, Cohen & Malad, Indianapolis, IN.

Terry R. Curry, Butler Hahn Hill & Schembs, Indianapolis, IN.

Ronald G. Sentman, Johnson Smith Pence & Heath LLP, Indianapolis, IN.

Edward C. Stewart, Wheeler Trigg & Kennedy, Denver, CO.

## ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

BARKER, Chief Judge.

Plaintiff, Analytical Surveys, Inc. ("ASI"), originally filed this action against Intercare Health Plans, Inc. and John Alden Life Insurance Company (collectively the "defendants") in Marion County Superior Court. ASI, an employer and plan sponsor for a self-funded health insurance plan for its employees, contends that the contract administrator, Intercare Health Plans ("Intercare"), breached its contract with ASI and was grossly negligent in processing employee health insurance claims. ASI alleges that Intercare's handling of these claims resulted in inordinate delays in presenting the claims to ASI's stop-loss insurer, John Alden Life Insurance Company ("Alden"), who in turn denied the claims as untimely. ASI further claims that Alden wrongfully refused to process and pay the claims pursuant to the terms of the insurance policy (the "Policy"). Defendants removed the state action to this court, invoking federal-question jurisdiction pursuant to sections 502 and 514 of the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. §§ 1132(a), 1144(a).

Defendants contend that ASI's claims relate to, and arise out of, the administration and funding of an ERISA plan, and therefore that those claims are completely preempted by ERISA. ASI asserts that there is no complete preemption and accordingly, moves to remand this action to state court. For the reasons discussed below, we *GRANT* ASI's motion for remand.

### Background

Prior to August 1997, ASI's employees were insured directly through a health insurance company. ASI then determined that it would be more efficient and cost-effective to initiate a self-funded health insurance plan (the "Plan"). *See* Compl. ¶ 7. Various ASI employees met with Jim Beardall, the President of Intercare, to discuss the use of Intercare as contract administrator for ASI's Plan. ASI personnel advised Beardall during these meetings that one of ASI's primary concerns was the "turn-around" time of the health claims. *Id.* ¶ 9. Beardall represented to ASI that Intercare was one of the largest third-party administrators in Colorado, that its average turn-around time for health claims (measured from claim submission to the completion of processing) was nine (9) days, and that Intercare's clients would attest to this efficiency. *Id.* ¶ 10.

On January 20, 1998, based on these representations, ASI entered into an Administrative Services Agreement ("ASA") with Intercare. *Id.* ¶ 11. The ASA contained an amendment which in relevant part stated:

> Claims are guaranteed to be processed in ten days or less.
>
> Claims are guaranteed to be processed at a 98 percent accuracy level.
>
> * * * * * *
>
> In the event that the accuracy and turn-around time of this guarantee are not satisfied, the fee for the service will be reduced by 20 percent.

*Id.* ¶ 12. In paragraph 12, the ASA further provided:

> Indemnification. The Contract Administrator [Intercare] agrees to indemnify and hold the Plan Sponsor harmless against any and all loss, damage and

expense with respect to any acts or omissions resulting from the Contract Administrator's willful action or gross negligence or bad faith.

*Id.* ¶ 13. ASI asserts that Intercare did not meet or honor its guarantees and that Intercare was grossly negligent in administering the claims. *Id.* ¶ 14. ASI alleges that Intercare's turn-around time for claims ranged from six (6) to twenty-one (21) months. *Id.* ¶ 15. In October 1998, ASI terminated the ASA with Intercare and contracted with another administrator, J.F. Molloy & Associates, Incorporated ("Molloy"), to process its employees' health care claims. *Id.* ¶ 16.

In addition to the ASA between Intercare and ASI, ASI also purchased "stop-loss," or excess, insurance from Alden to cover any employee health care claims exceeding a certain deductible. *Id.* ¶ 17. In October and November 1998, Molloy contacted Intercare concerning the claims that Intercare allegedly had processed negligently and asked Intercare to submit these claims to Alden for payment. *Id.* ¶ 18.

Relying on a provision in the Alden Policy requiring claims to be submitted within thirty (30) days after the deductible amount had been met, Alden refused to reimburse ASI for the submitted claims, which ASI had paid directly. *Id.* ¶ 19. However, the Policy also provided that Alden would not refuse to reimburse ASI if ASI was late in submitting a claim, provided that claims were submitted "as soon as reasonably possible and within one year of the date notice was required by [Alden]." *Id.* Additionally, ASI's Plan, which the Policy referenced, provided:

> First Notice of claim [submitted by plan participant on his or her health care provider] must be filed *within ninety (90) days of occurrence.* All claims should be submitted within a reasonable time frame for prompt processing. *Claims fifteen (15) months or older may be denied.*

*Id.* ¶ 20 (emphasis supplied in complaint). Thus, ASI asserts that Alden knew, from the plain language of the Plan which Alden had approved, that up to fifteen-month-old claims would be paid under the Plan. *Id.* ¶ 21. Many of the claims tendered to Alden, which Alden has refused to pay, were submitted within the twelve (12) month provision of the Policy and within the fifteen (15) month provision of ASI's Plan. *Id.*

ASI alleges that it has paid more than $317,000 in employee health claims, which amount was incurred due to Intercare's gross negligence and breach of the ASA and/or Alden's refusal to abide by the terms of the Policy and the Plan. *Id.* ¶ 22. ASI asserts both a breach of contract and gross negligence claim against Intercare and a breach of contract claim against Alden. *Id.* ¶¶ 23–33.

### Discussion

Before discussing whether ASI's state law claims are completely preempted by ERISA, we must begin with a brief discussion of the principles governing removal jurisdiction in federal courts under 28 U.S.C. § 1441. That statute allows "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, [to] be removed by the defendant or the defendants, to the district court of the United States...." 28 U.S.C. § 1441(a). The propriety of removal in this case depends upon whether we have federal question jurisdiction, under 28 U.S.C. § 1331, which gives federal courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he burden is on the party seeking to remove, and the case should be remanded if there is doubt as to the right of removal." *Kenro, Inc., v. Fax Daily, Inc.,* 904 F.Supp. 912, 913 (S.D.Ind.1995) (*citing Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 911 (7th Cir.1993)).

Federal question jurisdiction is normally governed by the well-pleaded complaint rule. Under that rule, a court

examines "the plaintiff's well-pleaded complaint, for '[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raise[s] issues of federal law.' " *Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir.1995) (*quoting Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). In contrast, a federal question that solely arises in a defendant's argument does not confer federal jurisdiction. *See Rice,* 65 F.3d at 639. Such an argument fails to overcome the " 'policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the case heard in state court.' " *Id.* (*quoting Caterpillar Inc. v. Williams,* 482 U.S. 386, 398–99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Federal preemption used as a defense to a state law action (sometimes referred to as "conflict preemption" or "defensive preemption") does not confer federal jurisdiction. *See Rice,* 65 F.3d at 639. Thus, a defendant cannot remove a case to federal court simply by asserting a federal question in his responsive pleading. *Id.*

Conflict preemption should not be confused with the doctrine of complete preemption, which is an exception to the well-pleaded complaint rule. *Id.* at 640; *Stutler,* 998 F.Supp. at 969 (*citing Taylor,* 481 U.S. at 63, 107 S.Ct. 1542). The term complete preemption causes some confusion because it is not a preemption doctrine, but rather a federal jurisdiction doctrine. *See Speciale v. Seybold,* 147 F.3d 612, 615 (7th Cir.1998). On occasion, the Supreme Court has concluded that the

preemptive force of a federal statute is so extraordinary that it re-characterizes a state common-law complaint into one stating a federal claim for purposes of applying the well-pleaded complaint rule and determining jurisdiction. *See Caterpillar Inc., v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425 (*citing Taylor,* 481 U.S. at 65, 107 S.Ct. 1542). Thus, unlike conflict preemption, complete preemption creates federal question jurisdiction. *See Rice,* 65 F.3d at 640.

■ The Labor Management Relations Act and ERISA represent the two, primary statutes where courts have applied the complete preemption doctrine. The doctrine's application in the ERISA context originated in *Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). *See Rice,* 65 F.3d at 639 (stating that the Supreme Court observed that an action that came within the scope of § 502(a) might be subject to complete preemption). Later, in *Metropolitan Life Insurance Co. v. Taylor,* the Supreme Court held that "a plaintiff's common law claims were completely preempted by ERISA, because they were within the scope of § 502(a)(1)(B)." *Rice,* 65 F.3d at 639 (*citing Taylor,* 481 U.S. at 64, 66, 107 S.Ct. 1542). These cases establish that ERISA § 502(a)[1] provides a basis for complete preemption, while § 514(a) only provides a basis for conflict preemption. *See Rice,* 65 F.3d at 639–40.

■ This case requires us to determine whether ASI's state law claims are within the scope of § 502(a) and therefore completely preempted by ERISA. The Seventh Circuit has developed a three-part

---

1. ERISA § 502(a), codified as 29 U.S.C. § 1132(a), in pertinent part, provides:

A civil action may be brought—
***
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . .

test for determining when claims fall within the ambit of § 502(a):

> Three factors are relevant for determining whether a claim is within the scope of § 502(a): (1) whether the "plaintiff [is] eligible to bring a claim under that section;" (2) whether the plaintiff's "cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a),"; and (3) whether the plaintiff's "state law claim cannot be resolved without an interpretation of the contract governed by federal law."

*Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir.1996) (*quoting Rice,* 65 F.3d at 641, 644) (internal citations omitted). In applying the *Rice* factors to this case, we are bound by the complete preemption doctrine, although we may look beyond the complaint to assure ourselves that the plaintiff has not attempted to use "artful pleading" to defeat the defendant's right to a federal forum. *Id.* at 1489.

### ASI's Claims Are Not Completely Preempted

After careful review, we find that the application of the *Rice* factors does not favor complete preemption of ASI's claims, even though ASI is eligible to bring suit under § 502(a), the first prong of the *Rice* test. Section 502(a) outlines the circumstances under which a civil action under ERISA is permissible, providing that a "civil action may be brought … by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(2). ASI, as a plan sponsor, does not on its face fit into any of these categories. Yet, defendants characterize this case as either an action by a Plan fiduciary and/or an action on behalf of the Plan participants, namely the employees. *See* Def. Alden's Opp'n to Pl.'s Mot. for Remand at 5–6; Def. Intercare's Opp'n to Pl.'s Mot. for Remand at 6–8. While we

disagree with the characterization that this action is brought on behalf of ASI's employees, we agree that ASI is a Plan fiduciary.

Defendants, in each of their respective briefs, list the various references in the complaint to ASI's "employees." Defendants argue that these references show that this is a suit on behalf of the plan participants. However, the bulk of these references merely provide background information. The only reference that merits discussion is found in the prayer for relief contained in count II of the complaint, which requests "any and all other expenses incurred by ASI and its employees." This is insufficient to re-characterize the entire complaint as one on behalf of the employees. Such language is not found in the prayers that follow the other counts in ASI's complaint. Further, ASI has explained that the inclusion of this prayer was inadvertent and has expressly withdrawn the language.[2] *See* Pl.'s Reply in Supp. of Mot. for Remand at 2 & n. 1. Finally, the defendants have not attempted to demonstrate, nor have we independently ascertained, how ASI has standing to bring a claim on behalf of its employees. Given the defendants' burden to make such a showing, we conclude that this case is not an action brought by ASI on behalf of its employees.

■ An issue warranting greater consideration with respect to the first prong of the *Rice* test is whether ASI is a fiduciary with respect to the Plan. "An ERISA fiduciary is … anyone who has substantial control over the assets, management, or administration of an ERISA plan." *Health Cost Controls of Illinois, Inc. v. Washington,* 187 F.3d 703, 709 (7th Cir. 1999) (*citing* 29 U.S.C. § 1002(21)(A)); *see also Varity Corp. v. Howe,* 516 U.S. 489, 498–505, 116 S.Ct. 1065, 134 L.Ed.2d 130

---

2. Obviously, such inadvertencies are not favored practice, perhaps exposing plaintiff to claims of artful pleading. However, the complaint when considered as a whole clearly supports our conclusion that ASI has not brought this action on behalf of the Plan participants.

(1996) (holding that employer was acting as ERISA fiduciary when it misled employees regarding security of their benefits); *Harold Ives Trucking Co. v. Spradley & Coker, Inc.*, 178 F.3d 523, 526 (8th Cir.1999) (holding that a plan sponsor was an ERISA fiduciary to the extent that it was vested with and exercised discretionary control). We are of the view that ASI has sufficient discretionary control over the Plan to confer fiduciary status upon it. The ASA provides that the "administration services to be performed by [Intercare] pursuant to this Agreement shall be ministerial only, and shall be performed within the framework of policies, interpretations, rules, practices, and procedures made or established by the Plan Sponsor [ASI]." ASA § 2(c). This provision not only establishes that Intercare lacked any express discretionary control over the assets, management, or administration of the Plan, but it also demonstrates that ASI was the authority vested with discretionary control over the Plan. Further, the fact that ASI terminated the ASA with Intercare and contracted with Molloy demonstrates ASI's control over plan management. *See* Compl. ¶ 16. Given these facts and the lack of any argument from ASI denying that it acted as a fiduciary, we conclude that ASI is a Plan fiduciary to the extent that it exercises discretionary authority and control as Plan sponsor.·

■ While the first *Rice* element favors complete preemption, the second clearly does not. As a fiduciary, ASI would only be entitled to bring an ERISA action under §§ 502(a)(2) and (a)(3). Section 502(a)(2) empowers a fiduciary to bring an action for appropriate relief under § 409, codified at 29 U.S.C. § 1109, which imposes liability for breach of fiduciary duty. For a person to be "liable for breach of a fiduciary duty, 'a court must ask whether [that] person is a fiduciary with respect to the particular activity at issue.'" *Plumb v. Star Mktg. and Admin. Inc*, 124 F.3d 849, 854 (7th Cir.1997) (*quoting Coleman v. Nationwide Life Ins. Co.*,

969 F.2d 54, 61 (4th Cir.1992)). In order to be labeled a fiduciary, some measure of discretionary control must be present. *See Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir.1992) ("ERISA makes the existence of discretion a sine qua non of fiduciary duty."). In other words, while ASI may have been entitled to bring an action under § 502(a)(2), it could only do so against another party for breach of fiduciary duty.

It is clear that Intercare and Alden were not fiduciaries with respect to their dealings with ASI and the Plan; therefore, no fiduciary duty was breached, as required to sustain an action pursuant to § 502(a)(2). We first look to the plan documents to determine the existence of a fiduciary duty. *See Plumb*, 124 F.3d at 854 ("[A]n insurer generally will not be held to be a fiduciary with respect to an activity unless the plan documents show that the insurer was responsible for that particular activity."). The previously cited provisions from the ASA establish that the services provided by Intercare were intended to be purely ministerial and that ASI never delegated to Intercare any discretionary control over the Plan.

■ We are mindful that the definition of a fiduciary under ERISA is a functional one, turning on how the parties behave and not on formal designations such as who functions as the plan trustee. *See Plumb*, 124 F.3d at 855–56; *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999); *Harold Ives*, 178 F.3d at 526. Nevertheless, the parties in this case have not alleged that Intercare exercised any discretionary control over the Plan and we can infer none from the evidence before us. To the contrary, ASI has expressly stated that it has not brought claims against Intercare as a fiduciary. *See* Pl.'s Reply in Supp. of Mot. for Remand at 6. Likewise, no party has contended that defendant Alden was charged with or exercised discretionary control over the Plan. Rather, in its brief, Alden focuses on § 502(a)(3) as the provision by which ASI

could have brought an ERISA action, which provision does not pertain to a defendant's putative status as a fiduciary. Given the defendants' burden to demonstrate that removal is proper, and the fact that all the evidence before us favors the finding that neither of these defendants received or exercised discretionary control over the Plan, we conclude that the defendants are not properly classified as fiduciaries under ERISA with respect to the activity at issue in this case.

■ The only other § 502(a) provision under which ASI could have brought an action against these defendants is § 502(a)(3), which allows a plan fiduciary to obtain appropriate equitable relief for an act or practice that violates ERISA or the terms of the Plan. Alden asserts that ASI's complaint seeks equitable relief in the form of restitution. *See* Def. Alden's Opp'n to Pl.'s Mot. For Remand at 6. The Seventh Circuit addressed this precise issue in *Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.*, 39 F.3d 784 (7th Cir.1994).

*Buckley Dement* involved an ERISA claim under § 502(a)(3) by a plan sponsor against a third-party claims administrator, and as in the case at bar, the sponsor sought monetary reimbursement for claims it was required to pay. The sponsor contended that these money damages were the functional equivalent of disgorged benefits obtained by the administrator and would make the sponsor whole again, concluding that this remedy qualified as classic equitable relief. *Id.* at 787. The Seventh Circuit held otherwise. After carefully reviewing the complaint, the court concluded that the focus of the complaint was the payment of money damages.

*Id.* The court held that such monetary relief constituted compensatory damages, a legal remedy, which is inconsistent with the relief contemplated by § 502(a)(3). *Id.* at 787–88; *see also Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 710–11 (7th Cir.1999) ("[R]estitution is a legal remedy when sought in a case at law and an equitable remedy when sought in a case in equity."). Similarly, in its claims against both Intercare and Alden, ASI seeks money damages for the claims it actually paid.[3] Therefore, under the rule set forth in *Buckley Dement*, we construe ASI's claims as being for compensatory damages and not restitution. Section 502(a)(3) does not permit the recovery of such damages, thereby foreclosing an action that ASI could enforce via § 502(a), the second prong of the *Rice* test.

■ Finally, the third *Rice* factor also disfavors complete preemption. ASI's claims against Intercare and Alden do not require interpretation of the Plan, the contract governed by federal law. Most importantly, ASI's relationships with the defendants are governed by two contracts that stand independently of the Plan. In regard to Intercare, ASI's and Intercare's respective obligations flow directly from the ASA, a contract that depends in no relevant respect on an interpretation of the Plan. For example, ASI seeks damages against Intercare based on a provision in the ASA that affords ASI a 20 percent discount if Intercare fails to process claims within the 10–day guarantee specified in the ASA. Consultation of the Plan, much less interpretation of it, is unnecessary to determine if Intercare met its processing obligations under the ASA.[4] Likewise,

---

3. While the focus of the complaint is the recovery of money damages, ASI also seeks to recover 20% of all the administrative fees paid by ASI pursuant to the ASA. These claims are also legal damages, not equitable relief, as they are based on damages flowing from an alleged breach of contract.

4. ASI does not dispute that the claims submitted by its employees were the type contem-

plated by the Plan. (Indeed, Intercare eventually processed the claims, albeit in allegedly delinquent fashion, and submitted the medical claims at issue in this case to ASI for payment.) While the defendants have not contended that the medical claims eventually processed by Intercare were of the type not subject to reimbursement under the Plan, this defensive argument would fail in the context

ASI's "gross negligence" claim, which is based on the indemnity provision of the ASA and, in effect, is a variant of ASI's breach of contract claim, draws its essence from the duties allegedly required of Intercare by the ASA. The defendants have not provided us, or explained for that matter, any specific provision in the Plan requiring interpretation to resolve the gross negligence issue, a burden that rests solely with them in seeking removal. In fact, ASI's complaint makes it clear that its negligence theory is founded principally on the allegedly untimely processing of the medical claims, a matter governed solely by the ASA. Whether the indemnity provision in the ASA allows for recovery on a negligence theory and whether the untimeliness alleged here amounts to such negligence are issues requiring interpretation of the ASA, not the Plan.

Defendants further contend that because ASI's employees did not have contract claims against either Intercare or Alden, their right to recovery could only arise under the terms of the Plan. *See* Def. Alden's Opp'n to Pl.'s Mot. For Remand at 7. The defendants point to various references to the Plan in the ASA and in the Policy and argue that these references will require review of the Plan. *See* Def. Intercare's Opp'n to Pl.'s Mot. For Remand at 8; Def. Alden's Opp'n to Pl.'s Mot. For Remand at 2–4.

These arguments by the defendants rely on the premise that ASI is seeking recovery on behalf of its employees. However, as stated above, we do not construe ASI's complaint as one on behalf of its employees. Rather, ASI seeks recovery on its own behalf based on its independent contractual relationships with the defendants. The Plan should come up only by way of simple reference and background information. Simple reference to a plan does not result in complete preemption. *See Rice,* 65 F.3d at 645.

We also conclude in regard to defendant Alden that ASI's breach of contract claim

does not depend on interpretation of the Plan. The relationship between ASI and Alden is predicated squarely upon the terms of the insurance Policy, a contract that binds ASI and Alden to contractual obligations that stand apart from the Plan. ASI's implied contract claim draws closer to triggering complete preemption, but that claim ultimately avoids an interpretation of the Plan as well. ASI contends that the insurance Policy created an implied contract with Alden that up to fifteen-month-old claims would be paid under the Plan. *See* Compl. ¶ 21. ASI claims such an implied contract by virtue of the mere reference to the Plan. ASI then points to language in the Plan providing that up to fifteen-month-old claims would be paid by the Plan. At first glance, this may seem to require interpretation of the Plan. However, application of the Plan's fifteen-month provision depends solely upon an interpretation of the insurance Policy. The timing of claims submissions from ASI to Alden is governed expressly by the insurance Policy, which provides:

> CLAIMS UNDER THIS POLICY …
> *Benefit payments will be made only under the terms of this Policy* ….

> You [ASI] must submit claims to Us [Alden] in writing within 30 days after the date a Deductible Amount has been met…. We will not refuse to reimburse You if You are late in submitting a claim, provided You submit the claim as soon as reasonably possible and within one year of the date notice was required by Us.

> Insurance Policy between ASI and Alden at 3 (emphasis added).

This provision of the insurance Policy demonstrates that it is the language of the Policy that governs the timing requirements regarding the submission of claims from ASI to Alden. Moreover, even if an interpretation of the Policy somehow allowed for application of the Plan's fifteen-month provision, defendants have not

of complete preemption even if they had advanced it.

shown how this fact would require an interpretation of this Plan provision. In opposing remand in this case, while generally saying that interpretation of the Plan will be required, defendants fail to show how the fifteen-month provision of the Plan would require any more than mere reference. A complete copy of the Plan has not even been presented in any of the pleadings or submissions in this case. Given the defendants' burden to justify removal and our duty to resolve any doubts in favor of remand, we find that ASI's claims do not require interpretation of the Plan.

In briefing this matter, ASI heavily relied upon the Ninth Circuit's holding in *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355 (9th Cir. 1997). While this reliance was unnecessary, as the Seventh Circuit has already provided the appropriate test upon which we rely today, we nevertheless find further support for our decision in observing that the Ninth Circuit, using a different method of analysis, but under similar facts, arrived at a similar conclusion. As in the case at bar, *Geweke* involved an employer bringing state contract claims against a third-party administrator and an excess liability insurer. The defendants removed the case to federal court and the employer sought remand. *Id.* at 1357. The Ninth Circuit employed a "relationship test" to determine the limits of ERISA's preemption. *Id.* at 1358–59 ("[T]he key issue is whether the parties' relationships are ERISA-governed relationships."). Under that test, the court found that the plaintiff's claims did not affect the relationships between the principal ERISA participants and concluded that the state law claims were not preempted by ERISA. *See id.* at 1360. Similarly, if a relationship test were applied in this case, it also would require remand of this action to state court.

In sum, while ASI is eligible to bring an action under ERISA as a fiduciary, ASI's claims do not fall within the scope of an ERISA provision that the ASI could enforce via § 502(a) nor do ASI's claims

require interpretation of the Plan. The balance of these factors favors remand; accordingly, ASI's motion to remand this action to state court is *GRANTED*.

### Award of Costs and Attorney Fees

 As a final matter, ASI also seeks costs and attorney fees incurred as a result of the defendants' removal. *See* Combined Mot. For Remand & Mem. Supp. at 10. An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Awards of costs and fees under § 1447(c) no longer require a finding that the removal was in bad faith. *See Tenner v. Zurek*, 168 F.3d 328, 329–30 (7th Cir. 1999).

ASI contends that the entitlement to costs and attorney fees merely depends on whether the case is remanded. This position is clearly incorrect. The commentary to 1447(c) expressly states that it is within the court's discretion to award costs and fees. In fact, our sister courts have considered a variety of factors in denying an award of costs and fees. *See Pauley v. Ford Electronics & Refrigeration Corp.*, 941 F.Supp. 794, 804 (S.D.Ind.1996) (finding award of costs and fees inappropriate where removal was a reasonable and cautious response to a complaint that did not clearly identify the legal theories for relief and that unnecessarily referred to the collective bargaining agreement); *Hohenegger v. Northern Indiana Pub. Serv. Co.*, 967 F.Supp. 350, 353 (N.D.Ind.1997) (denying costs and fees when the removal question was close and plaintiff supplied no particular reason for awarding costs and fees); *Nill v. Essex Group, Inc.*, 844 F.Supp. 1313, 1321 (N.D.Ind.1994) (denying costs and fees where the nonremovability of the action was not obvious).

 In this case, the defendants' removal of this action was a reasonable response to a complaint that unnecessarily and, by ASI's own admission, inadvertently referred to ASI employees and their

losses. Also, while ASI alerted the defendants to the *Geweke* case in an attempt to discourage removal, the outcome of this matter was not obvious. In briefing this matter, ASI relied heavily on the Ninth Circuit's decision in *Geweke*. ASI almost completely ignored Seventh Circuit precedent on complete preemption and failed to engage in the analysis explicated in *Rice*. In light of these considerations, we do not find that the attempted removal in this case warrants an award of costs and fees. Accordingly, we *DENY* ASI's motion for costs and fees.

### Conclusion

For the reasons discussed, we conclude that ERISA fails to completely preempt ASI's state law claims. Accordingly, we lack subject matter jurisdiction over this case and remand the action to Marion County Superior Court. ASI is not entitled to costs and attorney fees.