**Kurt SAMUELS, Plaintiff,**

v.

**PCM LIQUIDATING, INC., et al., Defendants.**

**No. CV–94–3264–RSWL(CTx).**

United States District Court, C.D. California.

March 20, 1995.

John K. Saur, Irvine, CA, for Plaintiff.

Julie McCoy Akins, Stradling, Yocca, Carlson & Rauth, Newport Beach, CA, for Defendant PCM Liquidating, Inc.

Lewis, D'Amato, Brisbois & Bisgaard, Robert K. Wrede, Paul J. Herring, Los Angeles, CA, for Defendant Pacific Crest Mills, Inc.

Michael A. Vanic, Joseph C. Faucher, Reish & Luftman, Los Angeles, CA, for Defendant Great–West Life Assurance Company.

## ORDER GRANTING DEFENDANT GREAT WEST LIFE INSURANCE & ANNUITY COMPANY'S MOTION FOR SUMMARY JUDGMENT

LEW, District Judge.

## I. INTRODUCTION

Plaintiff Kurt Samuels ("Samuels") brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking payment of health care benefits under an employee benefit plan established and maintained by his former employer, Defendant Pacific Crest Mills ("Pacific Crest"). Samuels brought suit against Pacific Crest as well as against the entity his former employer contracted with to process benefit claims, Defendant Great–West Life Insurance & Annuity Company ("Great–West").

Great–West now moves for summary judgment on the ground that it is not a proper defendant in this case under ERISA. Specifically, Great–West asserts that it is an improper defendant because it is not the employee benefit plan itself, nor is it a fiduciary or administrator of the plan. The matter was scheduled for argument on March 20, 1995, but was removed from the Court's law and motions calendar pursuant to Rule 78 of the Federal Rules of Civil Procedure. Now, having carefully considered all of the papers filed in support of and in opposition to Great–West's motion, the Court hereby GRANTS the motion for summary judgment.

## II. BACKGROUND

In March 1987, Samuels was hired by Pacific Dye Concepts, a company related to Defendant Pacific Crest. Through his employment, Samuels participated in an employee benefit plan which, among other things, provided medical benefits to Pacific Crest employees. Pacific Crest designated Scott Wingate, Vice President of Administration at Pacific Crest, as the plan administrator.

Pacific Crest's medical benefits plan was entirely self-funded; that is, Pacific Crest funded an account from which all medical claims would be paid. Pacific Crest established and maintained this "claims account" with Colorado National Bank ("CNB") and hired Great–West to process and pay claims submitted to the plan.[1] Every month, Great–West would electronically transfer

---

1. Under the written agreement entered into between Pacific Crest and Great–West, Great–West was to perform a variety of ministerial functions, including, *inter alia*, assistance in plan enrollment, claim form preparation, benefit determination in accordance with the plan, benefit payments in accordance with the plan, and direct payment of benefits to plan participants. *See* Certificate of Coverage, Gnadt Decl. ex. A, at 18.

funds from the claims account to its own account, compensating it for claims paid in the previous month. According to the parties' agreement, if the claims account contained insufficient funds to cover claims paid in the previous month, Great–West could unilaterally terminate its services and stop processing claims. Gnadt Decl., ex. A, at 16. In addition, pursuant to the agreement Pacific Crest retained ultimate managerial control over the medical benefits plan and did not delegate any such control to Great–West. Gnadt Decl., ex. A, at 7.

In July 1992, Samuels' employment with Pacific Crest was terminated. Thereafter, Samuels elected to continue his benefits under the plan in exchange for assuming payment of the COBRA premium. On January 9, 1993, while his coverage under the plan was still in force, Samuels suffered a heart attack. He sought and obtained medical treatment for this condition, anticipating that the plan would pay the resultant medical bills.

On January 20, 1993, Pacific Crest notified Samuels and Great–West in writing that the plan would be terminated effective January 31, 1993 and that all claims for services rendered before that date would have to be submitted by February 15, 1993. Pacific Crest further advised Great–West that it was not authorized to access the claims account for claims submitted after January 26, 1993. *See* Gnadt Decl. ex. C. Thereafter, Pacific Crest apparently breached its agreement with Great–West and its plan participants by failing sufficiently to maintain the claims account for purposes of paying claims submitted before the plan's termination date. As a result, pursuant to the terms of its agreement with Pacific Crest, Great–West suspended its performance under the agreement and, on February 2, 1993, ceased processing claims. Consequently, the claims submitted by Samuels' as a result of his heart attack were neither processed nor paid by Great–West.

On April 4, 1994, Samuels filed this action in California Superior Court against PCM Liquidating, Inc., Pacific Crest Mills d/b/a Pacific Crest Carpets, and Great–West Life Insurance & Annuity Company. Defendants removed the case to this Court on May 18, 1994, asserting federal question jurisdiction under ERISA. Although Samuels' original complaint set forth three causes of action for breach of contract, his First Amended Complaint ("FAC"), filed June 28, 1994, sets forth causes of action for wrongful denial of ERISA governed benefits, and for imposition of a statutory penalty under 29 U.S.C. § 1132(c) for failure to provide information relating to denial of benefits.

On February 3, 1995, Great–West filed the present motion for summary judgment, arguing that it cannot be sued under ERISA since it is not the plan entity, fiduciary or administrator. This Court finds Great–West's argument persuasive, and shall therefore GRANT the motion for summary judgment.

## III. DISCUSSION

### A. Standard for Issuing Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56(b).

Initially, it is the moving party's burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). However, the moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. Indeed, the moving party need not produce any evidence at all on those matters. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In this situation, the moving party's burden is met simply by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Nevertheless, "[i]t is not enough to move for summary judgment ... with a conclusory

assertion that the [opposing party] has no evidence to prove his case." 477 U.S. at 326, 106 S.Ct. at 2555. The moving party must identify the specific issue or issues on which it claims the opposing party has no supporting evidence, and demonstrate the absence of such evidence. *See Mount Pleasant v. Associated Elec. Co-op.*, 838 F.2d 268, 273 (8th Cir.1988). In opposing the motion for summary judgment, the non-moving party cannot simply rest on its pleadings. It must make an affirmative showing on all matters placed in issue by the motion as to which it will have the burden of proof at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.[2]

### B. Plaintiff's First Cause of Action under Section 1132(a)(1)(B) for Denial of Employee Benefits

Samuels brings this action solely within the framework of ERISA, since that statute preempts any relevant provisions of state law. 29 U.S.C. § 1144(a) (preemption of state law); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir.1985).

Through his First Cause of Action, Samuels seeks to recover payment of medical benefits pursuant to the employee benefit plan established and maintained by Pacific Crest. Under ERISA, a participant in or beneficiary of an employee benefit plan may bring suit to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(A). However, such an action may be maintained *only* against the *plan as an entity*. *Gibson v. Prudential Ins. Co.*, 915 F.2d 414, 417 (9th Cir.1990); *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1287 (9th Cir. 1990), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991); *Gelardi*, 761 F.2d at 1324–25; *see* 29 U.S.C. § 1132(d) ("An employee benefit plan may sue or be sued under this subchapter as an entity."); *id.* § 1132(d)(2) ("Any money judgment under this subchapter against an employee ben-

efit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.").

█ In this case, it is readily apparent that Great–West, by its agreement with Pacific Crest, is only a facilitator of the plan and is not itself the relevant employee benefit plan.[3] *See* 29 U.S.C. § 1002(1) (defining an employee welfare benefit plan). Therefore, Great–West cannot be liable to Samuels for unpaid medical benefits under § 1132(a)(1)(B).

#### 1. Fiduciaries of an Employee Benefit Plan

Under ERISA, a participant or beneficiary of an employee benefit plan may also bring an action for breach of fiduciary duty. *Gibson*, 915 F.2d at 417; *Madden*, 914 F.2d at 1287; *Gelardi*, 761 F.2d at 1324–25; *see* 29 U.S.C. §§ 1105(a), 1109(a). Although Samuels' FAC does not specifically set forth a cause of action for breach of fiduciary duty, the Court will nevertheless address whether Great–West could be sued as such, since the FAC makes reference to Great–West being a fiduciary of the Plan.

█ ERISA defines a fiduciary of a plan, in relevant part, as anyone who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... [or] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). A person whose duties under a plan are purely ministerial is not a plan fiduciary. *Kyle Railways, Inc. v. Pacific Admin. Servs., Inc.*, 990 F.2d 513, 516 (9th Cir.1993).

---

**2.** Samuels' opposition relies in large part on an argument that, under ERISA, a plaintiff has little or no burden to oppose a motion for summary judgment, and that in fact it is a defendant's burden to conclusively disprove the plaintiff's case. The law cited by Samuels provides no support for this argument, nor is there any such reversal under ERISA of the normal burdens of

proof under Fed.R.Civ.P. 56. *See Gibson v. Prudential Ins. Co.*, 915 F.2d 414, 416 (9th Cir.1990).

**3.** While Samuels' FAC makes express reference to an "Employee Benefit Plan (Plan) covered by the Employee Retirement Income Security Act of 1974," FAC ¶ 6, that Plan is not named as a defendant in this case.

■ The evidence submitted by the parties demonstrates that Great–West had no discretionary authority or control over the plan or its assets and that its duties under the plan were purely ministerial. Great–West's function was to process and pay medical claims in accordance with the plan. In fact, the written agreement between Great–West and Pacific Crest indicated that Pacific Crest fully retained ultimate managerial control over the plan and did not delegate any such managerial control to Great–West. *See* Gnadt Decl. ex. A, at 16.[4]

■ Samuels attempts to argue that, notwithstanding the agreement between Great–West and Pacific Crest, Great–West did exercise discretionary authority and control over the plan and its assets, making it a de facto fiduciary. While some support for this argument exists as a matter of law, see *Kyle Railways*, 990 F.2d at 517, Samuels has presented no evidence whatsoever that Great–West in fact acted as a fiduciary in this case. Since the agreement itself provides prima facie evidence that Great–West did not act as a fiduciary, Samuels argument must fail.[5]

### C. Plaintiff's Second Cause of Action for Statutory Penalties under Section 1132(c)

■ A plan participant or beneficiary may bring suit against the plan administrator to recover a statutory penalty for failure to provide information relating to an employee benefit plan. 29 U.S.C. § 1132(c). Samuels asserts such a cause of action in his FAC as a result of the plan's (and its administrator's) failure to provide him with information regarding the denial of his benefits. *See* FAC ¶ 26.

Under ERISA,

> [t]he term "administrator" means (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). No person other than those specified in the foregoing definition may be liable for statutory penalties as a plan administrator under 29 U.S.C. § 1132(c). *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299–300 (9th Cir.1989) (stating that courts must "limit liability under 1132(c) to the targets expressly identified by Congress in section 1002(16)"). Since Great–West is neither the administrator named in the plan, nor the plan sponsor, it cannot be liable under § 1132(c) for statutory penalties.[6] This conclusion is supported by the fact that the instrument under which the plan is operated in fact does name an ERISA plan ad-

---

4. Specifically, the agreement between Great–West and Pacific Crest provided:

> The Employer [Pacific Crest] acknowledges that he has authority to control and manage the operation of the Plan. It is expressly agreed that under no circumstances will the Company [Great–West] be designated as plan administrator or a fiduciary of the Plan. Nothing herein shall be deemed to constitute the Company as a party to the Plan or to offer upon the Company any authority or control respecting management of the Plan, authority or responsibility in connection with administration of the Plan or responsibility for the terms or validity of the Plan.... The Employer further agrees that nothing herein shall be deemed to impose upon the Company any obligation to an Employee or Dependent under the Plan.

Gnadt Decl. ex. A, at 16.

5. Samuels' recovery of plan benefits under a breach of fiduciary duty theory would also fail since such a claim may only be brought for the benefit of the plan itself, and not for the benefit of a participant in the plan. *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1417 (9th Cir.1991).

6. Samuels argues that, while Great–West was not specifically named in the plan as an administrator, it acted as one, and should therefore be liable under § 1132(c). *See Law v. Ernst & Young*, 956 F.2d 364, 372 (1st Cir.1992) (finding a "plethora of evidence" to support the conclusion that the plan sponsor should be held liable as the de facto plan administrator). Even if this Court were to recognize such an expansive definition of the term "administrator," Samuels has again failed to produce any evidence that Great–West ever acted as a plan administrator. The correspondence from Great–West indicating "administrative delays" in processing Samuels' claim bears no relation to the definition of a plan administrator under ERISA and cannot, as he attempts to argue, estop Great–West from asserting that it is not the plan administrator.

ministrator, Pacific Crest's Vice President, Scott S. Wingate. *See* Gnadt Decl. ex. B, at 189.

## IV. CONCLUSION

Finding there to be no genuine issue of material fact and that Great–West is entitled to judgment as a matter of law, the motion for summary judgment shall be **GRANTED**. Great–West is not the plan entity, fiduciary or administrator of the plan, nor is there any evidence that it acted as such in this case. Therefore, Plaintiff cannot sue Great–West under the causes of action asserted, and judgment in its favor shall be **GRANTED**. Great–West's Proposed Statement of Uncontroverted Facts and Conclusions of Law is hereby incorporated into this Order.

**IT IS SO ORDERED.**