OPINION
 

 KLEINFELD, Circuit Judge:
 

 The issue in this ERISA case is whether a health benefits plan administrator can be sued as a fiduciary. We conclude that in this case dismissal of the claims against the administrator was error, because of questions regarding the administrator’s discretionary authority, and also its control of plan money.
 

 Facts
 

 The district court dismissed this action on the ground that the defendant was, under its contractual undertaking, not an ERISA fiduciary. Though the case came before the district court on a 12(b)(6) motion to dismiss, the court considered the contracts between IT Corporation and General American (attached to the motion), as well as the complaint, so we review the dismissal
 
 de novo
 
 as on summary judgment.
 
 United States v. Grayson,
 
 879 F.2d 620, 625 n. 8 (9th Cir.1989). The appeal does not argue procedural irregularity, so we do not consider it.
 

 IT Corporation hired General American Life Insurance Company to administer IT’s ERISA plan. Under the Administrative Services Agreement which General American had IT Corporation sign, IT was to establish a bank account and keep enough money in it to cover checks. General American had cheekwriting authority. General American was to process claims, and pay or deny them. The contract says that General American “shall pay all claims which it has determined
 
 *-166
 
 to be payable under the agreement, except ... all contested or doubtful claims or benefits amounts shall be referred to the client for its determination of liability and instruction.”
 

 The complaint alleges that General American paid over $600,000 for medical expenses relating to an IT Corporation employee’s dependent child. According to the complaint, the child was ineligible for benefits, and General American paid $600,000 from the ERISA plan bank account in violation of the terms of the plan. There are three plaintiffs: the plan, IT Corporation, and a participant-employee.
 

 The plan included a number of clauses designed to limit General American’s liability in the event of error or misjudgment. IT Corporation and General American agreed that General American would be “acting only as agent of’ IT, and would “not be liable for any mistake of judgment or other action taken in good faith, or for any loss unless resulting from its gross negligence.” One clause in the agreement General American obtained from IT said that “under no circumstances shall the service contractor [General American] be considered the named fiduciary under the Plan.” The agreement further provided: “Each individual administrative act, decision and interpretation by [General American] (including any errors, clerical or otherwise) shall be binding upon the [IT] with respect to past performance or completed action.”
 

 Basically, General American was supposed to refer doubtful claims to IT, but IT would ordinarily not even know about a claim unless and until General American exercised its judgment to decide that the claim was doubtful. In routine medical claims, General American was to conduct “verification of employee eligibility as to coverage and benefits” and provide “claim control practices,” and then pay the claims as it deemed appropriate and provide monthly reports of claim payments. General American was to “consult with [IT Corporation] or legal counsel designated by [IT] in claim matters that are beyond the ordinary.” The contract provided that General American “shall investigate the validity of each claim ... and shall compute the benefits payable, if any, on each such claim.” Then General American “shall pay all claims which it has determined to be payable under the agreement,” except that “[a]ll contested or doubtful claims or benefit amounts shall be referred to the client for its determination of liability and instruction to the service contractor.” IT Corporation retained authority to “resolve any disputes which may arise with regard to the rights of persons covered under the Plan, including but not limited to eligibility for participation and claims for benefits.”
 

 Analysis
 

 1. Contractual Exoneration.
 

 Though General American did much to exonerate itself from responsibility by means of the contract it had IT Corporation sign, the contractual exoneration cannot do it much good in this case. There are several reasons why not. First, a contract exonerating an ERISA fiduciary from fiduciary responsibilities is void as a matter of law. Second, a fiduciary’s contract with an employer cannot get it off the hook with the employees who participate in the ERISA plan. They did not sign a contract exonerating the fiduciary. Third, a contract providing that a party is not a named fiduciary does not mean that it is not an unnamed fiduciary. Fourth, discussed in section 2, below, the contract does not limit General American’s tasks to the purely ministerial.
 

 If an ERISA fiduciary writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect. With exceptions not relevant to this case, ERISA provides that “any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.” 29 U.S.C. § 1110(a). If General American is a fiduciary, as defined in section 1002(21)(A), “any interpretation of the Plan which prevents [General American] acting in a fiduciary capacity from being found liable as [a] fiduciary] is void.”
 
 Kayes v. Pacific Lumber Co.,
 
 51 F.3d 1449, 1460 (9th Cir.),
 
 *-165
 

 cert. denied,
 
 — U.S. —, 116 S.Ct. 301, 133 L.Ed.2d 206 (1995). “ERISA defines fiduciary not in terms of formal trusteeship, but in
 
 Junctional
 
 terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties — and to damages — under § 409(a).”
 
 Id.
 
 at 1459 (quoting
 
 Mertens v. Hewitt Assocs.,
 
 508 U.S. 248, 262, 113 S.Ct. 2063, 2071, 124 L.Ed.2d 161 (1993)) (emphasis in original).
 

 Even if General American could by contract exonerate itself from fiduciary responsibilities to IT Corporation, there is no reason to suppose that the contract would exonerate General American from its duties to participants and beneficiaries of the ERISA plan. 29 U.S.C. §§ 1104, 1110(a);
 
 cf.
 
 Restatement (Second) of Trusts § 216, comment i (1959). The participant-employee plaintiff did not sign the contract with the exonerating provisions, and he is entitled to have the plan administered in the interest of participants and beneficiaries. 29 U.S.C. § 1104. The ERISA Plan itself also sued for breach of what it claimed was General American’s fiduciary responsibility to the Plan.
 

 The contract says that “under no circumstances shall the service contractor [General American] be considered the named fiduciary under the Plan.” The word “named” in this provision leaves open the possibility that General American may be an unnamed fiduciary. There is a difference under ERISA, between a “named fiduciary,” under 29 U.S.C. § 1102(a), and a “fiduciary” under 29 U.S.C. § 1002(21)(A). Named fiduciaries are a subset of fiduciaries.
 

 2. Fiduciary Status.
 

 The most substantial argument for exonerating General American is that it was not a fiduciary, because its duties were purely ministerial. The contract says:
 

 It is understood that the Service Contractor [General American] performs purely ministerial functions for the Client [IT Corporation] within a framework of policies, interpretations, rules, practices and procedures made by the Client.
 

 Though based on the contract, General American’s “purely ministerial” argument is not subject to the weaknesses of contractual exoneration. It is one thing to say “we promise to act as a fiduciary, but we shall not be subject to the liabilities of fiduciaries to beneficiaries.” That generally cannot be done. It is different to say “we will do certain things for you, but only cut and dried things under your direction, not any of those acts which would make us a fiduciary.” That can work. If a fiduciary tells a bookkeeping service to send a check for $950 to Mercy Hospital, the bookkeeping service does not thereby become a fiduciary.
 

 The words General American used in its contract, “purely ministerial functions,” were obviously written to fit the established legal understanding of what acts could be done without turning General American into a fiduciary. The Department of Labor has issued “questions and answers” regarding the distinction between persons performing “ministerial duties” and fiduciaries. These “questions and answers” distinguish persons performing “purely ministerial functions” from fiduciaries:
 

 Only persons who perform one or more of the functions described in section 3(21)(A) of the Act with respect to an employee benefit plan are fiduciaries. Therefore, a person who performs
 
 purely ministerial functions
 
 such as the types described above, for an employee benefit plan within a framework of policies, interpretations rules, practices, and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.
 

 29 C.F.R. § 2509.75-8 at D-2 (emphasis added).. But putting the magic words in the contract, “purely ministerial duties,” does not avoid fiduciary responsibility, if the characterization, “purely ministerial duties,” is not correct. The issue is not just how the duties are characterized, but what they are.
 

 
 *-164
 
 The plaintiffs’ theory is that General American breached its fiduciary duty to Plan participants by paying over $600,000 on a non-eligible claim, thereby depleting the amount available for proper claims. If General American was a fiduciary, and if it breached its fiduciary duty, then it would have to make good any loss resulting from its breach. 29 U.S.C. § 1109(a). General American argues it was not a “fiduciary” as defined by ERISA We conclude, for two reasons, that General American may be a fiduciary, and was not entitled to judgment as a matter of law on this record that it was not. First, its discretionary authority and control may exceed what could properly be characterized as “purely ministerial” activities. Second, authority and control over plan assets may make it a fiduciary.
 

 a. Discretionary Authority.
 

 ERISA makes a person who exercises “discretionary authority or discretionary responsibility” in plan administration a fiduciary:
 

 ... [A] person is a fiduciary with respect to a plan to the extent [i] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or [iii] he has any
 
 discretionary authority or discretionary responsibility
 
 in the administration of such plan.
 

 29 U.S.C. § 10Q2(21)(A) (emphasis added).
 

 The Department of Labor’s “questions and answers” do not resolve whether General American’s duties respecting IT Corporation’s ERISA plan were “discretionary” or “purely ministerial.” “[P]ersons who have no power to make any decisions as to plan policy, interpretation, practices or procedures” are not fiduciaries. 29 C.F.R. § 2509.75-8 at D-2. A plan employee “whose sole function is to calculate the amount of benefits to which each plan participant is entitled in accordance with a mathematical formula,” does not thereby become a fiduciary. But a plan employee “who has the final authority to authorize or disallow benefit payments in eases where a dispute exists” is a fiduciary.
 
 Id.
 
 at D-3.
 

 One could say that General American has no final authority to authorize or disallow benefits in disputed cases, because the contract requires it to refer disputed cases back to IT Corporation. But it is hard to say that General American has no power to make decisions about plan interpretation, because General American has to interpret the plan to determine whether a benefits claim ought to be referred back. No claim is likely to be known to or disputed by IT Corporation unless and until General American decides that it is questionable or doubtful enough to be worth referring back to IT Corporation for instructions.
 

 ERISA health benefits in this case cannot be calculated from a mathematical formula, as retirement benefits might be if the plan made them depend solely on date of birth, date of entry into service, gross pay for last three years of service, and date of retirement. So far as the record shows, this ERISA plan did not have a schedule of illnesses and medical treatments with a dollar limit, to delineate routine claims from those which should be referred back to IT Corporation. So far as we can tell from the record, General American’s decisions about claims would have to have involved plan interpretation and judgment, not just typing a treatment code number and treatment provider identification onto a computer screen for generation of a payment check. The contract says that General American “performs purely ministerial functions for the client within a framework of policies, interpretations, rules, practices and procedures made by the client.” That framework is strikingly elaborate for its application to be purely ministerial. Federal appellate judges merely apply law to facts within a framework of statutes, rules, and precedent which binds them, but because of the multifariousness of facts and complexities of application of this elaborate framework, the task often involves difficult and- close questions of judgment. Calling interpretation and judgment “purely ministerial” does not make it so.
 

 There is tension between our decisions in
 
 Yeseta v. Baima,
 
 837 F.2d 380, 385-86 (9th Cir.1988) and
 
 Kyle Railways, Inc. v. Pacific Administration Services, Inc.,
 
 990 F.2d 513
 
 *-163
 
 (9th Cir.1993), regarding whether a firm providing claims services is an ERISA fiduciary. In
 
 Yeseta,
 
 the person managing the profit sharing plan was instructed by one of the principals in the company to pay him an amount in excess of what he was entitled to. We held that whether the person “was authorized to make the ... withdrawals or not, he did exercise control over and disposed of Plan assets. His acts in this respect were not ministerial. On this basis, Yeseta is a fiduciary under § 1002(21).”
 
 Id.
 
 at 386. On the other hand, in
 
 Kyle,
 
 we held that a health plan administrator which was to “refer all discretionary questions regarding the payment of claims” to the employer was not a fiduciary, because its functions were “merely ministerial.”
 
 See
 
 990 F.2d at 516.
 

 Kyle
 
 is distinguishable because the question there was merely whether paying non-covered claims, paying claims twice, and paying them late, was enough power to make the administrator a fiduciary. The power to err, as when a clerical employee types an erroneous code onto a computer screen, is not the kind of discretionary authority which turns an administrator into a fiduciary. It may turn out, when the record is more fully developed, that General American had no discretion, and was just hiring clerical employees to type codes and mail checks, but the record does not now show that its duties were purely ministerial. For all we know from the record as it stands, General American paid $600,000 on a non-covered medical claim, not through clerical error, but because it had considerable discretion and made a misjudgment about plan interpretation. That would be more like
 
 Yeseta.
 

 b. Control Over Assets.
 

 There is a second reason, which does not depend on whether General American had discretion, why it may be a fiduciary. The record as it stands shows that General American controlled the money in the plan’s bank account. The statute treats control over the cash differently from control over administration. The statutory qualification, that control must be “discretionary” for it to establish fiduciary status, applies to the first and third phrases, management and administration but not to the second, assets. “Any” control over disposition of plan money makes the person who has the control a fiduciary:
 

 ... [A] person is a fiduciary with respect to a plan to the extent [i] he exercises any discretionary authority or discretionary control respecting management of such plan
 
 or exercises any authority or control respecting management or disposition of its assets,
 
 ... or [iii] he has any discretionary authority or discretionary responsibility in the administration of such plan.
 

 On the record as it stands, IT Corporation was to keep the plan bank account filled with money, and General American would write checks on the bank account. IT was to set up a bank account, “as the depository for funds to be used by [General American] to make payments.” IT was required to notify the bank that General American was authorized “to issue and accept checks drawn on such account.” IT had the “responsibility to maintain funds in this account sufficient to cover all cheeks validly issued by the service contractor’s authorized employees.” This provision means that as a practical matter, a substantial amount of money would be under the control of General American, in the form of a bank account which it could deplete by writing checks.
 

 The right to write checks on plan funds is “authority or control respecting management or disposition of its assets.” We need not decide, because the case never got to the stage of cross motions for summary judgment, whether General American’s authority to instruct the plan’s bank to pay money to the order of drawees makes it a fiduciary as a matter of law. Its authority under the plan to do so cannot be reconciled with holding that it is a non-fiduciary as a matter of law. Only that issue is before us because of the early stage at which the case was dismissed. The words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan’s money have fiduciary responsibility to the plan’s beneficiaries, require that a person with authority to direct payment of a plan’s money be deemed a fiduciary-
 

 
 *-162
 
 Authority over a plan’s money is not the same thing as being a depository of the money. If the plan’s money is deposited in a bank, that does not
 
 ipso facto
 
 make the bank a fiduciary.
 
 Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona),
 
 96 F.3d 1310, 1317 (9th Cir.1996). When money is deposited in a bank, generally the bank has no authority over who the money is paid to, and the bank manages its own money, not the depositor’s, because the depositor loans its money to the bank for its own use. People with checking accounts do not worry that their banks will pay out their money to persons of the bank’s choice, because the bank has no authority or control entitling it to pay anyone but payees and endorsees on cheeks. Unlike Citibank in
 
 Arizona Carpenters,
 
 General American had authority to write checks, that is, to dispose of plan assets.
 

 Conclusion
 

 The judgment dismissing the claims is REVERSED. The case is REMANDED for further proceedings.