**MORTGAGE LENDERS NETWORK USA, INC.**

v.

**CORESOURCE, INC.**

No. 3:03CV1578(JBA).

United States District Court,
D. Connecticut.

Sept. 16, 2004.

James M. Andriola, Anderson Kill & Olick, Greenwich, CT, for Plaintiff.

**Ruling on Motion to Dismiss**
**[Doc. # 15]**

ARTERTON, District Judge.

Plaintiff, Mortgage Lenders Network USA, LLC ("MLN"), the Plan Sponsor and Plan Administrator of a self-funded employee benefit health plan, brought suit against defendant CoreSource, the Plan Supervisor, alleging breach of contract, breaches of ERISA and common law fiduciary duties, and negligence. Defendant CoreSource has moved to dismiss the second count of plaintiff's complaint, on grounds that plaintiff has failed to state a claim for relief under both ERISA and common law fiduciary duty theories. For the reasons discussed below, defendant's motion is granted in part and denied in part.

**I. Background**

In April 1999, MLN adopted its self-funded employee benefit health plan ("MLN Plan") and entered into an agreement with CoreSource, making Core-Source the Plan Supervisor charged with performing certain services for the claims administration and operation of the MLN Plan. *See* First Amended Complaint [Doc. # 12] at ¶¶ 8–9. For example, CoreSource was required to "review claims for benefits," to "provide an appropriate check and explanation of benefits, and when appropriate, deny claims not eligible," to "communicate with physicians, hospitals, and other third party providers ... in order to clarify or verify benefits or claims," and to "advise [MLN] as to payments required to be made." *See id.* at ¶ 12 (quoting Agreement for Plan Supervisor [Doc. # 12, Ex. A] at ¶ 3.04). While MLN thereby delegated much of the responsibility for claim processing to CoreSource, MLN retained "final authority to decide the insurance (or reinsurance) company or companies chosen under the Plan, and to choose the benefits

and other provisions in the Plan Document." Agreement for Plan Supervisor [Doc. # 12, Ex. A] at ¶ 2.06. Section VII of the Agreement also provided that MLN retained ultimate authority for determinations as to benefit payments, and that "for the purposes of ERISA and any applicable State legislation of similar nature," MLN shall be deemed the Plan Administrator. *Id.* at ¶ 7.01. Further, the Agreement provided that CoreSource, "in performing its obligations under this Agreement is acting only as an agent of the Company, and shall not for any purpose be deemed an employee of MLN or a fiduciary of the Plan." *Id.*

Under the terms of the MLN Plan, non-experimental, medically necessary procedures were covered, but experimental procedures, such as those that were still under study or the subject of ongoing Phase I, II, or III clinical trials, were exempted from coverage. *See* First Amended Complaint [Doc. # 12] at ¶¶ 15–16; MLN Plan [Doc. # 12, Ex. B].

MLN purchased stop-loss insurance from Clarendon National Insurance Company ("Clarendon"), in which Clarendon agreed to pay for all medical benefits established under MLN's Plan, except for "expenses which are not medically necessary or are in excess of [MLN's] Plan benefits," and "expenses resulting from experimental/investigational medical practices or procedures or for any care, medicine, services, or supplies not considered legal in the United States." First Amended Complaint [Doc. # 12] at ¶ 20.

In July 2001, Alyssa Koski, the three year old daughter of MLN employee James Koski and a covered person under the MLN Plan, was diagnosed with Stage IV neuroblastoma. *See id.* at ¶¶ 24, 26. After Alyssa Koski was evaluated and accepted for a triple autologous peripheral stem cell transplant at Children's Memorial Hospital in Chicago, CoreSource re-

tained an independent physician to review the proposed treatment in order to determine whether the proposed treatment was covered under the MLN Plan. *See id.* at ¶¶ 28–29. On or about October 22, 2001, the independent physician informed CoreSource that the treatment was medically necessary, but was considered investigational and/or experimental, because it was in a Phase II Clinical Trial period and was not considered the standard of care. *See id.* at ¶ 30. CoreSource therefore advised MLN that the proposed treatment would not be covered under the MLN Plan. On October 23, 2001, CoreSource requested that New York Underwriters, the managing general underwriter for Clarendon, review whether Alyssa Koski's proposed treatment was covered under the Stop Loss Agreement. *See id.* at ¶ 32. CoreSource was informed by New York Underwriters on October 30, 2001 that the proposed treatment was not covered under the Stop Loss Agreement, and in November 2001, CoreSource advised MLN of New York Underwriters' decision. *See id.* at ¶¶ 34, 35. In November 2001, Alyssa Koski's father appealed CoreSource's determination, and CoreSource retained a second independent physician. Although the second independent physician initially agreed that the proposed treatment was considered experimental, after conferring with Alyssa Koski's attending physician and receiving supplemental information, the second independent physician amended his opinion and reported that the proposed treatment was no longer considered experimental because the clinical trials for the procedure had been concluded and a manuscript detailing the results of the study had been approved for publication. *See id.* at ¶¶ 38–41.

On November 26, 2001, CoreSource requested that New York Underwriters review the amended opinion of the second independent physician. After reviewing

the opinion, New York Underwriters informed CoreSource on December 18, 2001 that it had not changed its position that Alyssa Koski's proposed treatment was "experimental / investigational," and therefore not covered under the Stop Loss Agreement. *See id.* at ¶¶ 42–43. According to plaintiff's complaint, CoreSource did not inform MLN of the decision of New York Underwriters. *See id.* at ¶ 44.

On or about January 11, 2002, New York Underwriters informed CoreSource that it would provide coverage to MLN for a single transplant and two chemotherapy sessions, but that additional stem cell support therapies would not be covered. *See id.* at ¶ 45. After again discussing with CoreSource the findings of CoreSource's second independent physician, on or about January 17, 2002, New York Underwriters agreed to further review the case with Clarendon. *See id.* at ¶ 47. On the same day, CoreSource informed MLN that MLN had a viable claim for coverage under the Stop Loss Agreement based on the opinion of its second independent physician, which relied on the anticipated publication of a new study detailing the results of a clinical trial of the proposed treatment for Alyssa Koski. *See id.* at ¶ 48. Based on the information CoreSource provided, MLN approved Alyssa Koski's triple autologous peripheral stem cell transplant, and on January 21, 2002, Alyssa Koski underwent this procedure. *See id.* at ¶¶ 58–59.

On January 25, 2002, New York Underwriters again informed CoreSource that it viewed the treatment as "experimental/investigational" under the Stop Loss Agreement. On February 14, 2002, CoreSource provided MLN with copies of the clinical study, the article for publication, and New York Underwriters' January 25, 2002 denial of coverage. *See id.* at ¶ 61. Alyssa Koski subsequently underwent two more stem cell rescue treatments. *See id.* at ¶¶ 62, 65.

MLN alleges that Clarendon denied MLN stop-loss coverage for the second and third stem cell rescue treatments performed on Alyssa Koski, deeming the treatment experimental/investigational and not medically necessary. *See id.* at ¶¶ 67, 71. MLN alleges that CoreSource knew that the stop-loss carrier had refused to cover certain treatments, yet failed to inform MLN in a timely manner and recommended payment of the treatments despite its awareness that these treatments were not covered under the Stop–Loss Agreement.

Count One of MLN's First Amended Complaint alleges that CoreSource breached its contractual obligations to MLN under the Agreement for Plan Supervisor. Count Two alleges breaches of both ERISA and common law fiduciary duty. Count Three alleges that CoreSource was negligent in performing its duties as Plan Supervisor.

CoreSource seeks dismissal of Count Two of MLN's First Amended Complaint, on grounds that CoreSource was not a fiduciary of the MLN Plan. Focusing on the ERISA claim in Count Two, the defendant first argues that the Agreement for Plan Supervisor expressly provides that CoreSource is not a fiduciary of the MLN Plan. Second, defendant argues that Core-Source was not an ERISA fiduciary of the MLN Plan because MLN is "claiming not that CoreSource breached a fiduciary duty to the MLN Plan, but rather breached a fiduciary duty to Plaintiff itself. ERISA does not provide for such a claim." Defendant's Memorandum of Law in Support of Motion to Dismiss Count Two of Plaintiff's Complaint [Doc. # 16] at 9. CoreSource next challenges the common law fiduciary duty claim, arguing that because the parties explicitly contracted that no fiduciary relationship exists, Connecticut law will not impose a common law fiduciary duty.

In the alternative, defendant argues that if the Court denies CoreSource's motion as to the ERISA claim in Count II, then it must dismiss the alleged common law breach of fiduciary duty claim as preempted by ERISA.

Plaintiff MLN responds by arguing first that CoreSource's arguments cannot be decided at the motion to dismiss stage because there is a factual dispute between the parties as to CoreSource's status as a fiduciary. MLN also argues that the disavowal of the fiduciary relationship in the Agreement for Plan Supervisor does not dispose of its ERISA claim, because a fiduciary under ERISA may not contract away its duties and obligations. Plaintiff rejects CoreSource's claim that it was merely an agent of MLN and had no fiduciary duties per the terms of the Agreement, and argues that under both ERISA and common law, CoreSource functioned as a fiduciary to MLN and the MLN Plan, and may be held liable for breaches of fiduciary duties.

## II. Standard

When deciding a 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. Discussion

The issue of whether CoreSource may be deemed a fiduciary of the MLN Plan is appropriate for consideration at this motion to dismiss stage. "[W]here the facts are not in question, whether a party is an ERISA fiduciary 'is purely a question of law.'" *LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir.1997). Here, as all factual assertions relied on in this Court's decision are as alleged in plaintiff's complaint, or as stated in the relevant plan documents attached to plaintiff's complaint, and as the plaintiffs have not identified any areas in which the facts are disputed, the issue is appropriately viewed as a question of law appropriate for disposition on a motion to dismiss.[1]

### A. Existence of Fiduciary Duty to the Plan

The first issue the defendant's motion presents is whether CoreSource, the Plan Supervisor charged with providing administrative services to MLN, the ERISA Plan Administrator and named fiduciary, can itself be deemed a fiduciary of the ERISA Plan. ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority

---

1. At oral argument before this Court on August 6, 2004, the parties disputed whether CoreSource was the *de facto* decision-maker on benefits determinations. However, nowhere in its complaint does MLN allege that CoreSource exceeded its authority under the terms of Plan Supervisor Agreement. Thus, as will be discussed in more detail below, the Court's analysis of whether CoreSource functioned as a fiduciary to the ERISA plan is not affected by the allegation that MLN accepted without contest CoreSource's recommendations and served as a mere "rubber stamp" in the Alyssa Koski claim.

over the plan ..." *Mertens v. Hewitt Associates, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (citation omitted). Under ERISA, a "fiduciary" with respect to a plan is one who, *inter alia,* "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," or "who has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). "Congress intended ERISA's definition of fiduciary to be broadly construed." *LoPresti v. Terwilliger,* 126 F.3d 34, 40 (2d Cir.1997) (citations and international quotation marks omitted).

Here, the Plan Supervisor Agreement between CoreSource and MLN expressly provides that "[t]he Plan Supervisor shall not for any purposes be deemed an employee of the Company or a fiduciary of the Plan." Plan Supervisor Agreement [Doc. # 12, Ex. A] at ¶ 701. Whether CoreSource qualifies as a fiduciary thus turns first on the question of to what extent this contractual provision may be given effect. MLN, relying on *IT Corporation v. General American Life Insurance Co.,* 107 F.3d 1415 (9th Cir.1997), argues that a fiduciary duty may not be contracted away. In *IT Corporation,* the Ninth Circuit concluded that a company hired to administer IT Corporation's ERISA plan, which had authority to process claims, and pay or deny them, was a fiduciary to the Plan despite a contractual provision that "under no circumstances shall the service contractor be considered the named fiduciary under the Plan." *Id.* at 1418. As the Court in *IT Corporation* discussed, ERISA provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). The Ninth

Circuit thus concluded that if the defendant was in fact a fiduciary of the Plan, then any contractual agreement to exonerate the defendant from fiduciary responsibility was without effect. *Id.* at 1418–19.

■ A disclaimer of the existence of a fiduciary relationship, however, is distinguishable from a disclaimer of liability of an acknowledged fiduciary. *See Chicago Bd. Options Exchange, Inc. v. Connecticut,* 713 F.2d 254 (7th Cir.1983) ("[A]though the parties may decide how much authority to vest in any person, they may not decide how much liability attaches to the exercise of that authority."). As a result, ERISA's "void as public policy" provision, in 29 U.S.C. § 1110(a), is not entirely applicable to the contractual language at issue here. Nonetheless, as *IT Corporation* recognized, in light of the broad functional approach under ERISA to determining which entities are fiduciaries, and in light of ERISA's stated public policy of enforcing fiduciary duties regardless of contrary contractual agreements, a contractual disclaimer of a fiduciary relationship cannot be dispositive of whether such a relationship in fact existed. This Court, therefore, will view the contractual language in CoreSource's Plan Supervisor Agreement as relevant to, but not determinative of, whether CoreSource was in fact a fiduciary to the MLN Plan. *See Redall Industries, Inc. v. Wiegand,* 878 F.Supp. 1026 (E.D.Mich.1995) (finding disclaimer relevant to issue of whether third party administrator of ERISA plan was a fiduciary); *Samuels v. PCM Liquidating, Inc.,* 898 F.Supp. 711 (C.D.Cal.1995) (finding agreement between parties that defendant was not a fiduciary of the plan as prima facie evidence that the defendant did not act as a fiduciary).

The legislative history of ERISA reveals that the definition of fiduciary was meant to include "persons who have authority

and responsibility with respect to the matter in question, regardless of their formal title." H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 5038, 5103. Particularly illuminating of the issue in this case is the conference report's discussion of the circumstances under which "consultants" or "advisors" may be deemed ERISA fiduciaries:

> While the ordinary functions of consultants and advisers to employee benefit plans (other than investment advisers) may not be considered as fiduciary functions, it must be recognized that there will be situations where such consultants and advisers may because of their special expertise, in effect, be exercising discretionary authority or control with respect to the management or administration of such plan or some authority or control regarding its assets. In such cases, they are to be regarded as having assumed fiduciary obligations within the meaning of the applicable definition.

*Id.*

■ Reflecting this legislative history, therefore, a relevant question in determining if an advisor to the plan, like Core-Source, has assumed fiduciary obligations is whether that advisor has decision-making authority over aspects of the plan or "special expertise" that gives rise to the exercise of discretionary authority.

■ The Department of Labor has also issued regulations, in question and answer form, which further guide the resolution of this issue. Under 29 C.F.R. § 2509.75–8, persons who "have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform [certain] administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons" are not fiduciaries with respect to the plan. Among the administrative duties found not

to give rise to a fiduciary relationship are the "[a]pplication of rules determining eligibility for participation or benefits;" "[c]alculation of services and compensation credits for benefits;" "[c]alculation of benefits;" "[p]rocessing of claims;" and "[m]aking recommendations to others for decisions with respect to plan administration." 29 C.F.R. § 2509.75–8, ¶ D–2. According to the regulation, these functions are deemed to be "purely ministerial," and non-discretionary. Thus, the distinction between discretionary and ministerial functions rests on whether the functions merely implement plan policy, practice, and procedures, or have the ability to impact, modify, or further the development of plan policy and practice, such as by interpreting or making decisions about the plan.

■ The Department of Labor offers as an example the circumstances in which a "benefit supervisor" may be deemed to perform discretionary functions as opposed to "purely ministerial" ones. According to the regulation, if the plan designates as a " 'benefit supervisor' a plan employee who has the final authority to authorize or disallow benefit payments in cases where a dispute exists as to the interpretation of plan provisions relating to eligibility for benefits," then "the benefit supervisor would be a fiduciary within the meaning of section 3(21)(A) of the Act." *Id.* at ¶ D–3. It is clear from the regulation that a benefit determination based on no more than application of a mathematical formula in accordance with the Plan rules is a ministerial, rather than a discretionary act, even if it is the final decision on the claim. *See id.* It is similarly clear that a benefit determination that requires interpretation of plan provisions is a discretionary, not ministerial, act if it is the final decision on a disputed claim rather than a mere recommendation.

Applying this framework, the Second Circuit in *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir.1996), found that the defendants were not fiduciaries of an ERISA plan, because they merely remitted premiums and confirmed a participant's status as a full-time employee and covered member of the ERISA plan, actions which the Second Circuit found "cannot be construed as discretionary." Likewise, in *LoPresti*, 126 F.3d at 40–41, the Second Circuit concluded that a defendant was not a fiduciary of an ERISA plan because "[e]ven though he was authorized to sign checks on the Company's account and he had some general knowledge that deductions were made from employees' wages, ... he was primarily a production person with no responsibility for determining which of the company's creditors would be paid or in what order," and "did not exercise authority or control regarding the disposition of plan assets." *Id.* In both cases, the lack of discretionary decision-making authority on plan management or administration in the performance of their duties led to the conclusion that the defendants were not fiduciaries. Other Circuits have reached similar conclusions. *See, e.g. Mich. Affiliated Healthcare Sys. v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 548 (6th Cir.1998) (finding Plan Supervisor not to be a fiduciary of the Plan where duties included "reviewing claims for benefits, determining eligibility for benefits, and computing benefits payable," but where Plan Supervisor "referred contested or questionable claims to [Plan Administrator], which had sole and final discretion to grant or deny payment of the claim."); *Klosterman v. Western Gen. Mgmt.*, 32 F.3d 1119, 1122–25 (7th Cir.1994) (concluding that third party administrator was not an ERISA fiduciary where it did not have authority to make the ultimate decisions in doubtful or contested claims, and where the eligibility determinations were based upon a framework established by the employer, despite the fact that the third party administrator created the computer program that formed the main method of determining eligibility); *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 290 (11th Cir.1989) ("An insurance company does not become an ERISA "fiduciary" simply by performing administrative functions and claims processing within a framework of rules established by an employer."); *see also McManus v. Gitano Group, Inc.*, 851 F.Supp. 79, 82 (S.D.N.Y. 1994) (finding third-party administrator not an ERISA fiduciary where appeals of denied claims were referred to the Plan Administrator, not the third-party administrator); *Protocare of Metropolitan v. Mutual Association Administrators, Inc.*, 866 F.Supp. 757, 762 (S.D.N.Y.1994) (finding no fiduciary function where defendant made "initial determination of whether a submitted claim should be recognized" by "simply appl[ying] the Plan rules," and where "[f]inal determination of whether a denial of benefits was proper rests with the Board of Trustees," not with defendant.).

The issue becomes more complex where, as here, a plan supervisor or third party administrator acts plays a critical role in interpreting plan provisions. In *Harold Ives Trucking Co. v. Spradley & Coker, Inc.*, 178 F.3d 523 (8th Cir.1999), the Eighth Circuit, considering a set of facts similar to this case, concluded that the third party administrator functioned as a fiduciary to an ERISA plan. There, Spradley & Coker, the third party administrator of the Harold Ives Plan, determined that a plan participant was not entitled to coverage for his treatment at a particular rehabilitation facility because that facility was not a "covered facility" under the plan. After an appeal, Spradley & Coker reversed its earlier decision. The excess loss carrier, however, had not changed its mind that the facility was not

covered under the plan. Harold Ives brought suit charging Spradley & Coker with breach of fiduciary duty under ERISA. The Eighth Circuit concluded that Spradley & Coker functioned as a fiduciary, having assumed discretionary authority when it "reversed its original decision that [a plan participant's hospitalization at a rehabilitation facility] would not be covered by the plan, without consulting the plaintiffs, and in the face of [the excess loss carrier's] "adamant" view that the charges would not be covered." *Id.* at 526. Thus, two facts were highly relevant to the Eighth Circuit's decision: Spradley & Cokers' determinations were interpretive, and therefore discretionary, because the eligibility for benefits was disputed; and Spradley & Coker decided the claim independently, "without consulting" the plaintiffs.

The Ninth Circuit has determined that the interpretation of plan provisions is alone sufficient to create fiduciary status, even where the entity lacks final decision-making authority. In *IT Corporation,* 107 F.3d at 1420, the defendant, General American, was required to refer disputed cases back to the IT Corporation for final decision. Nonetheless, the Ninth Circuit determined that "it is hard to say that General American has no power to make decisions about plan interpretation, because General American has to interpret the plan to determine whether a benefits claim ought to be referred back. No claim is likely to be known to or disputed by IT Corporation unless and until General American decides that it is questionable or doubtful enough to be worth referring back to IT Corporation for instructions." *Id.* at 1420. The court, noting that the health benefit determinations at issue could not be calculated from a mathematical formula, compared the defendant's responsibilities in interpreting the plan to those of a judge in applying law to facts within a framework of statutes, rules, and

precedent, and concluded that "calling interpretation and judgment 'purely ministerial' does not make it so." *Id.* at 1420. Thus, despite the absence of final authority over the plan, General American was deemed an ERISA fiduciary.

The Eleventh Circuit has concurred that interpretation of a plan's terms requiring more than application of a mathematical formula can create a fiduciary duty, *see Newell v. Prudential Ins. Co.,* 904 F.2d 644 (11th Cir.1990), and the Fifth Circuit has likewise found the existence of a fiduciary relationship despite the absence of final authority to grant or deny claims, *see Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc.,* 841 F.2d 658, 663 (5th Cir.1988).

■ This Court concludes that Core-Source cannot be deemed an ERISA fiduciary. Like *IT Corporation* and *Harold Ives,* here it is apparent that the benefits claim at issue did not lend itself to application of a mathematical formula, and whether the proposed treatment should be deemed experimental was hotly disputed. Thus, the kind of application of plan rules that CoreSource undertook here could fairly be described as interpretive. Nonetheless, this Court disagrees with the Ninth Circuit's conclusion that such a role alone can establish fiduciary status under ERISA.

The Department of Labor's interpretive regulation suggests that without decision-making authority, the mere fact that application of rules requires some interpretation is insufficient to create a fiduciary status. Among those functions classified as ministerial are "[a]pplication of rules determining eligibility for participation or benefits;" and "[m]aking recommendations to others for decisions with respect to plan administration." 29 C.F.R. § 2509.75–8, ¶ D–2. Likewise, while the regulation emphasizes that a "benefit supervisor" who

"has final authority to authorize or disallow benefit payments in cases where a dispute exists as to the interpretation of plan provisions" *id.* at D–3, is a fiduciary, it nowhere provides that recommendations or advice alone creates a fiduciary status. To the extent that ERISA is concerned with the ability to impact the ERISA Plan itself through policy or interpretative decisions, a Plan Supervisor's interpretation is significant only as a final decision, not as a recommendation.

Here, MLN has not alleged, and the Plan documents do not provide, that CoreSource had any final decision-making authority. To the contrary, in its complaint MLN alleges that "CoreSource advised MLN that, based upon Dr. Ketsel's recent study and anticipated publication regarding triple-tandem high dose therapy for neuroblastoma, such treatment was no longer considered 'investigational and/or experimental' " and that "based on Core-Source's independent physician's opinion and the information CoreSource communicated to MLN ... MLN approved Alyssa Koski's triple autologous peripheral stem cell transplant." First Amended Complaint [Doc. # 12] at ¶¶ 48, 58. The overwhelming focus of CoreSource's breach of fiduciary duty claim, therefore, is based on CoreSource's failures to "properly advise MLN," to "keep MLN properly informed," to "timely forward to MLN critical information," and "to properly understand the terms and conditions of the Plan." *Id.* at ¶ 90. Based on the allegations in MLN's complaint, it is clear that MLN, not CoreSource, had final decision-making authority over the Plan, and it is CoreSource's deficiencies in supporting MLN's role as the decision-maker that forms the core of the complaint. Both the Plan Supervisor Agreement and the MLN Plan itself support this view. *See, e.g.* Agreement for Plan Supervisor [Doc. # 12, Ex. A] at ¶ 7.01 ("The Plan Supervisor shall not for any purposes be deemed an employee of the Company or a fiduciary of the Plan. The Company hereby delegates to the Plan Supervisor authority to make determinations on behalf of the Company with respect to benefit payments under the Plan and to pay such benefits, subject, however, to a right of the Company to review and modify any such determination."); MLN Plan [Doc. # 12, Ex. B] at § XVI (providing for first level appeals to be sent to Plan Supervisor (CoreSource) and copied to Plan Administrator (MLN), but for the "secondary appeal decision," which "will be final," to be rendered by the Plan Administrator.). The fact that the parties viewed CoreSource's role as administrative and subject to supervision rather than discretionary, and provided that MLN would have final authority in the decision-making process, supports the view that CoreSource's functions were not fiduciary in nature. While it appears that CoreSource, unlike the third party administrators in *Michigan Affiliated* and *Klosterman,* investigated in the first instance questionable claims itself and reached conclusions on which it based its recommendations to MLN, MLN has made no allegation that CoreSource itself had the authority to make any final decisions on disputed claims or made the final decision on the claim at issue.

The legislative history suggests that fiduciary status may be created if an advisor to a plan has "special expertise," even if the advisor lacks formal decision-making authority. Thus, if CoreSource had "special expertise" that the Plan Administer would of necessity defer to, then the legislative history suggests that interpretive guidance, in the form of recommendations, would constitute exercise of discretionary authority. *See* H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 5038, 5103. Nothing in plaintiffs' complaint suggests that Core-

Source has any "special expertise." According to the complaint, in processing the claim at issue, CoreSource identified and hired two independent physicians who offered their opinions on whether the proposed treatment was experimental, received and reviewed the information on which the physicians relied when issuing their opinions, and advised MLN of their resulting recommendation. While the complaint alleges that CoreSource had access to information that they did not provide to MLN, it does not suggest that CoreSource had any special expertise that MLN did not itself possess over the administration of the plan.

At oral argument, MLN alleged that CoreSource served as a *de facto* decisionmaker on the Alyssa Koski matter, and MLN was a mere rubber stamp. But nowhere in its complaint does MLN allege that CoreSource made ever final decisions or took actions on the Alyssa Koski claim independently of MLN. Thus, regardless of MLN's acquiescence to CoreSource's recommendation in the claim determination at issue, there is no allegation that MLN ceded its fiduciary role under the plan to CoreSource, or that CoreSource assumed authority and control of the Plan. Because CoreSource did not have final decisionmaking authority with respect to the plan, and is not alleged to have had special expertise, this Court concludes that any interpretive role that may have gone into its recommendation on the benefits claim at issue did not give rise to fiduciary status under ERISA.

**B. Common Law Breach of Fiduciary Duty Claim**

█ CoreSource challenges plaintiff's common law breach of fiduciary duty claim on grounds that the Plan Supervisor Agreement between the parties expressly provides that CoreSource is not a fiduciary of the Plan. MLN responds that the parties also expressly contracted for North Carolina ·as the choice of law, and that under North Carolina law a disclaimer of fiduciary liability is not given effect. This Court need not decide the choice of law issue, because under its express terms, the Plan Supervisor Agreement disclaims CoreSource's status as a fiduciary to the Plan, not as a fiduciary to MLN itself. *See* Agreement for Plan Supervisor [Doc. # 12, Ex. A] at ¶ 7.01 ("The Plan Supervisor shall not for any purposes be deemed an ·employee of the Company or a fiduciary of the Plan."). Indeed, the Agreement provides that CoreSource is "an agent" of MLN, *id.* which clearly implies fiduciary status with respect to MLN. *See* Restatement (Second), 1 Agency § 1 ("Agency is the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."). The breaches of fiduciary duty alleged in the complaint, moreover, are primarily breaches of CoreSource's duties to MLN, not to the ERISA Plan. For example, MLN alleges that CoreSource breached its fiduciary duties by "(a) failing to properly advise MLN that Aylssa Koski's proposed medical treatment was always deemed an Experimental and/or Investigational form of treatment, and not the standard of care; (b) failing to properly and timely advise MLN that Alyssa Koski's proposed medical treatment was in Phase II of a clinical trial until one week after MLN's decision to authorize treatment; (c) failing to keep MLN properly informed of communications between CoreSource and Clarendon regarding coverage of Alyssa Koski's proposed medical treatment; (d) failing to timely forward to MLN critical information regarding the Koski claim . . . ; (e) failing to inform MLN that the revised findings of the second independent physician advisor were a reversal of an opinion submitted one day earlier; (f) failing to

inform MLN of Clarendon's refusal to provide coverage until the day of Alyssa Koski's medical treatment; and (g) failing to properly understand the terms and conditions of the Plan and Stop Loss Agreement and effectively and timely communicate its coverage analysis to MLN." First Amended Complaint [Doc. # 12] at ¶ 102. Because the parties agreed that CoreSource was to act as MLN's agent, and because the fiduciary duties owed to MLN are distinct from any duties owed to the Plan, this Court declines to find that the contractual disclaimer of fiduciary status with respect to the Plan controls.

## C. ERISA Preemption

 ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). In light of the broad federal preemption over any claims related to an ERISA Plan, the final issue here is whether MLN's common law breach of fiduciary duty claim may stand. This Court concludes that the common law breach of fiduciary duty claim is insufficiently related to an employee benefit plan, and therefore is not preempted by ERISA. "ERISA is a remedial statute enacted to protect the interests of beneficiaries of private retirement plans by reducing the risk of loss of pension benefits." *Geller*, 86 F.3d at 22. While the reach of ERISA's preemptive effect is broad, the intent of Congress "was not to foreclose every state action with a conceivable effect upon ERISA plans, but to maintain exclusive federal control over the regulation of such plans." *NYS Health Maintenance Org. Conference v. Curiale*, 64 F.3d 794, 803 (2d Cir.1995). Thus, while "ERISA's preemptive breadth encompasses even a law of general applicability if it has an impermissible effect on an ERISA plan," it does not extend to laws of general application if

their effect upon ERISA plans is incidental. *Id.* at 798–99.

In *Geller*, the Second Circuit found that the plaintiffs' common law fraud claim was not preempted even though it arose from the defendant's allegedly improper administration of the plan in identifying an ineligible person as a covered employee. The Court reasoned that "the plaintiffs' common law fraud claim, which seeks to advance the rights and expectations created by ERISA, is not preempted simply because it may have a tangential impact on employee benefit plans..." [A]lthough the defendants improperly administered the plan, the essence of the plaintiffs' fraud claim does not rely on the pension plan's operation or management. The "bare bones" of the claim are that 1) the defendants fraudulently misrepresented that Kleppner was a full-time employee and 2) in reliance on the defendants' representation, the plaintiffs paid out more than $104,000 on her behalf. The plan was only the context in which this garden variety fraud occurred." *Geller*, 86 F.3d at 23.

Here, as discussed above, plaintiffs' common law breach of fiduciary duty claim is only incidentally connected to the ERISA plan. Much of the claim focuses on CoreSource's alleged failure to fulfill certain duties owed to MLN. Like *Geller*, the Plan was only the context in which the garden variety breaches of fiduciary duty to MLN are alleged to have occurred. Moreover, like *Geller*, MLN's common law claim would not impact the regulation of the ERISA plan. Accordingly, plaintiffs' common law breach of fiduciary duty claim is not preempted by ERISA.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss [Doc. # 15] is granted in part as to the ERISA claim in Count Two of plaintiff's complaint, and denied as to

the common law breach of fiduciary duty claim in Count Two of plaintiff's complaint.

IT IS SO ORDERED.